## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

---

QUINTINA DESCHENIE,
GLORIA JEAN TODACHEENE,
FANNIE L. ATCITTY, and
PATRICIA EMRICK,

       Plaintiffs,

v.                                                   Civil No. 03-1226 WJ/DJS

BOARD OF EDUCATION OF CENTRAL
CONSOLIDATED SCHOOL DIST. NO. 22,
RANDY J. MANNING, individually and in his
capacity as School Board President,
GARY D. RAY, individually and in his
capacity as School Board Vice President,
STANLEY R. KING, individually and in his
capacity as School Board Secretary,
LINDA BESETT, individually and in her
capacity as Superintendent of Schools,
JAY MORTENSEN, individually and in his
capacity as Assistant Superintendent of Schools, and
DENNIS NICHOLSON, individually and in his
capacity as Assistant Superintendent of Schools,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment and Motion to Dismiss, filed February 23, 2004 (**Doc. 9**).  Defendants seek summary judgment on claims brought against Defendants Randy J. Manning, Gary D. Ray and Stanley R. King in their individual and official capacities, and also dismissal of the claims brought against the Board of Education of Central Consolidated School District.

At the heart of this controversy is the issue of Indian education, primarily the use of funds

for the bilingual program in the Central Consolidated School District ("CCSD"), which is located largely within the Navajo Indian Reservation.  Plaintiffs in this case are present and former employees at CCSD.  It is fair to say that Plaintiffs view themselves committed to Indian education and the bilingual program.  Plaintiff Quintina Deschenie ("Deschenie") was the director of bilingual education of CCSD, Plaintiff Gloria Jean Todacheene ("Todacheene") is an assistant curriculum support administrator of CCSD, Plaintiff Fannie L. Atcitty ("Atcitty") is a sixth grade teacher at Mesa School in Shiprock, and Plaintiff Patricia Emrick ("Emerick") is the Director of Exceptional Programs at CCSD.  Defendants who seek dismissal in this motion are the Board of Education and its officers.  Defendant Randy Manning ("Manning"), Defendant Gary Ray ("Ray") and Defendant Stanley King ("King") are, respectively, the President, Vice President and Secretary of the Defendant Board of Education (hereinafter collectively, "Board Defendants").

Plaintiffs allege that Defendants have engaged in a policy and practice of discouraging or preventing speech which questions the use of funds designated for bilingual or special education. Plaintiffs contend that Defendants fear Plaintiffs might voice opinions about those issues, or about CCSD's noncompliance with program requirements or use of program funds.  The Amended Complaint alleges violations of First Amendment, and Fourteenth Amendment Procedural Due Process (Deschenie only), and seeks injunctive relief and damages.[1]

## BACKGROUND

It would serve no purpose here to list each of the allegations made by each Plaintiff against each Defendant in this lawsuit, since a detailed chronology of events is not relevant to the issues raised in the present motion.  However, a general description of the allegations provides

---

[1] The Amended Complaint added Emrick as a Plaintiff to the lawsuit.

flavor for what is to come in the litigation of this case.  Initially, the Board Defendants espoused

views with regard to the value and relevance of bilingual education, with which Plaintiffs

outspokenly disagreed.

*Plaintiff Deschenie*

According to the Complaint and Amended Complaint, the majority of the allegations

revolve around what happened to  Deschenie, who was initially assigned to work with the CCSD

Indian Education Committee ("IEC").  Her activities with the Committee included assisting the

Committee in making presentations to the Board.  During these presentations, she expressed

dissatisfaction with the Board's bilingual education practices and with what she allegedly

perceived as discrimination against Navajos within CCSD.  The incidents concerning Deschenie

started after a retreat in August of 2002, when Manning questioned the value and relevance of

bilingual education.  Manning repeated these criticisms in October, 2002 at an Indian Education

Committee meeting.  Deschenie took issue with Manning's statements.  She subsequently wrote

to Manning, stating that the CCSD bilingual program did not meet standards, was underfunded,

and that staff had received inadequate support from the administration.  Deschenie wrote letters

to the Farmington Daily Times defending the bilingual program, questioned the CCSD's attorney

about the rule prohibiting administrative office employees from speaking Navajo in the office, and

questioned the Defendant administrators[2] about Navajo preferences in hiring for certain positions.

When the CCSD administration did not allow Navajo language instruction in the summer of 2003,

Deschenie arranged for a "Navajo language immersion camp . . . so that Indian education funds

_____

[2]Defendant administrators are Defendants Linda Bessett ("Bessett"), Jay Mortensen
("Mortensen") and Dennis Nicholson ("Nicholson").

3

would be used for relevant purposes." Amended Complaint, ¶ 30.  Deschenie also anonymously

requested public donations in order for teachers to be able to complete the Navajo language

curriculum project when CCSD allegedly cut off payment for the teachers.

Deschenie makes the following allegations of retaliation:

"   Ray and Besett surreptitiously attempted to get the name of the sponsors of the
    donation drive from the Farmington Daily Times;

"   Besett reprimanded Deschenie for discussions with the IEC, told Plaintiff to stop
    criticizing the Board and herself, and assigned Deschenie's immediate supervisor
    to attend IEC meetings and monitor Plaintiff's statements;

"   Besett, Mortensen and Nicholson falsely accused Deschenie of mismanagement of
    IEC funds;

"   Mortensen repeatedly criticized Deschenie for bringing up the issue of the needs of
    bilingual teaching staff;

"   On May 15, 2003, at a School Board work session, "Defendants" publicly and
    harshly rebuked Deschenie for views she made concerning bilingual and Indian
    education, thereby humiliating her in a public meeting;[3]

"   "Defendants" removed Deschenie from certain duties related to Indian education,
    limiting her responsibility only to the bilingual program.  Deschenie recollects that
    a regular Board meeting was held one week after the May 15th Board work
    session.  At that meeting, there was an executive session relating to personnel
    matters.  The following week, Besett told Deschenie that she was being demoted
    by changing her work duties as just described.  Deschenie Affidavit, ¶ 10;

"   In July, 2003, Besett conducted an unscheduled reevaluation of Deschenie's work
    performance, and put her on a "growth plan";

"   Besett removed Deschnie from the administration of "certain federally funded
    Indian education programs," which caused a suspension of those program
    activities;

"   Following a meeting of bilingual teachers on August 29, 2003 conducted by

───────────────

[3]  Deschenie's Affidavit states that "three members of the Board and the Superintendent"
participated in the rebuke.

> Deschnie and attended by Mortensen and Nicholson, Besett called in Deschenie for
> an "evaluation," accused her of making false statements to the bilingual teachers,
> and threatened her with termination if she made similar statements in the future;

"     In September and October of 2003, Besett assigned Deschenie a volume of work
> that she could not complete.

Amended Complaint, ¶¶ 33-45.

On November 12, 2003, Deschenie was served with a Notice of Intent to Discharge which notified Deschenie of Besett's intention to recommend to the CCSD Board of Education that Deschenie be discharged from her position as Director of Bilingual Education. Deschenie does not dispute Defendants' statement of fact that she did not request a hearing before the Board. Deschenie was placed on administrative leave with pay until the expiration of the time period allowed to request a hearing before the School Board.

Deschenie also alleges a due process claim in that she was demoted without notice or adequate hearing, and that Defendants' actions stigmatized her reputation.

*Plaintiff Atcitty*

According to the Amended Complaint, Atcitty spoke before the School Board on numerous occasions concerning Indian and bilingual education and the needs of Indian and other staff employees of the school district, e.g., the "English-only" policy for administrative staff. As a result of her speaking out on these issues, Atcitty alleges that Defendants retaliated against her as follows:

"     Mortensen reprimanded and rebuked Atcitty for attending the inauguration of
> Navajo Nation President Joe Shirley. Atcitty had worked on Shirley's campaign,
> and had taken leave to attend the inauguration.

"     Atcitty was docked pay of $277.00 for attending the event, and Mortensen
> prohibited Atcitty from serving on any boards or committees.

*Plaintiff Todacheene*

Todacheene attended the administrative retreat in August of 2002, at which Manning questioned the value and relevance of bilingual education.  Todacheene also expressed disagreement with Manning's views.  She describes repercussions that occurred within a few weeks after the retreat.  Mortensen informed her that the School Board was displeased with her and that the Board was considering reassigning her to be assistant principal at Newcomb. The Complaint states that at the time of the retreat, Todacheene, was principal of Mesa School in Shiprock.  Besett reprimanded Todacheene for her statements to Manning which defended bilingual education.

Todacheene alleges that she suffered retaliation at the hands of the Defendants because she spoke out in favor of Indian and bilingual education and for her having filed this lawsuit.  The following allegations are taken from the Amended Complaint and Deschenie's Affidavit.

" Although Defendants did not follow through with the threatened reassignment, she contends that she was prohibited from taking professional leave to speak at certain educational meetings, and was not rehired as principal for the 2003-2004 school year.  Instead, Todacheene was moved from her position as principal to an administrative position which did not previousy exist.

" "Reprimand" by Besett for statements to Manning which defended bilingual education (see above).

" After the lawsuit was filed, Todacheene was given a less than satisfactory evaluation, placed on a "growth plan," and warned that disciplinary action including termination may follow.[4]

*Plaintiff Emrick*

In the spring of 2002 Manning (who was CCSD Business Manager as well as Board

_____

[4]  Todacheene is not specific about which Defendant or Defendants took the alleged retaliatory actions.

President) informed Emrick and Deschenie that the CCSD administration was imposing a limit on expenditures for special education and bilingual education programs.  Emrick expressed concern to Manning and to the Assistant Director of Special Education of the New Mexico Department of Education that the CCSD administration was misusing funds set aside for bilingual and special education program funds because they were being used for other purposes.  Emrick claims that such use violates a prohibition against supplanting (as opposed to supplementing) other district funds.  After meeting with Besett, who was the Superintendent of Schools, Manning informed Emrick that the CCSD would proceed with using the funds for other purposes.

The Complaint states that on October 23, 2003, a public meeting was held by the Indian Affairs Committee of the state legislature because of concerns related to CCSD.  Emrick contends that due to her attendance at that meeting, and because of her expressed concern about the use of funds, she was perceived as a critic of the administration.  Emrick alleges that Nicholson, the Assistant Superintendent, left a meeting on two occasions "on the pretext" that Emrick had offended him, when in fact Emrick had "simply been participating in discussion in the meetings, and had not said anything personally offensive."  Amended Complaint, ¶66.  On November 13, 2003, Emerick aired her concerns about the use of designated funds to supplant other funds at a work session of the School Board.

As a result of her activities and her voiced concerns, Emrick alleges that she was retaliated against in the following manner:

"     On November 17, 2003, Emerick was put on a "growth plan" and threatened with further disciplinary action including termination (the Complaint does not specify which Defendant took this action).

## DISCUSSION

### I.      Legal Standards

Defendants contend that they are entitled to qualified immunity.  Once the Defendants

plead qualified immunity, the burden shifts to the Plaintiffs to demonstrate that (1) the

Defendants' conduct violated the law, and ( 2) the relevant law was clearly established when the

alleged violation occurred.  Migneault v. Peck, 158 F. 3d 1131, 1139 (10th Cir. 1998), abrog. on

other grds by. Kimel v. Florida Bd. of Regents, 528 U.S. 62 (2000); see Anderson v. Creighton,

483 U. S. 635, 640 ( 1987).  To show that a right is clearly established, there must be Supreme

Court or Tenth Circuit law on point, or the weight of authority from other courts must support

the Plaintiffs proposition.  See Armijo, 159 F. 3d at 1260; Migneault, 158 F. 3d at 1139-40. Unless

both prongs of the test are satisfied, qualified immunity must be granted.  See Migneault, 158 F.

3d at 1139.  If a plaintiff satisfies both prongs of the test, a defendant may still be entitled to

summary judgment as the movant in a motion for summary judgment by showing that there is no

genuine dispute as to any material fact which would defeat his or her claim of qualified immunity.

Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642 (10th Cir. 1988); Hinton v. City

of Elwood, 997 F.2d 774, 779 (1992).  Since Defendants present the motion as both a motion to

dismiss and as one for summary judgment, dismissal is also appropriate if it appears beyond doubt

that Plaintiffs can prove no set of facts which would entitle them to relief.  American Home Assur.

Co. v. Cessna Aircraft Co., 551 F.2d 804, 808 (10th Cir. 1977).  In the context of a motion to

dismiss, the Court's review of the qualified immunity defense is limited to the pleadings.  Gagan v.

Norton, 35 F.3d 1473, 1475 (10th Cir. 1994).

Defendants present a three-tiered argument for dismissing claims against the School Board

and individual Defendants Manning, Ray and King, in their individual and official capacities.

First, Defendants contend that no actions were taken by either the Board or the Board Defendants

against any of the Plaintiffs.  Second, they argue that the Board Defendants are entitled to

legislative immunity.  Last, they argue there is no evidence to support liability against the School

Board under Monell v. Dep't of Social Services, 436 U.S. 658 (1978).  I address Defendants first

and third arguments together, since the issue of School Board liability dovetails into the Court's

analysis of Plaintiffs' claims under Monell.

## II.   Liability of School Board [5]

Plaintiffs stake their claim of liability on the part of the School Board based on the actions

of any of the individual Defendants as opposed to just the Board Defendants.  Plaintiffs allege that

actions taken by any of the Defendants were taken pursuant to an unwritten policy or custom of

the Board, "in consultation or joint action with Board members, or were ratified by the Board."

Amended Compl. ¶ 15.  Defendants contend that the School Board is not liable not only because

it took no official action with regard to Deschenie, but also because an impermissible motive

attributed to one of the Board Defendants toward any of the Plaintiffs cannot be attributed to the

Board as a whole.  They further contend that no unconstitutional policy was formally adopted and

promulgated by the School Board.  However, the absence of official action by the Board does not

necessarily eliminate the Board's liability.

Case law allows local government entities, such as school boards, to be sued for damages

---

[5]  A suit against the Board Defendants in their official capacities is the same as a suit
against the Board itself.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (An action filed
against a state official in his  official capacity is simply another way of pleading an action against
an entity of which an officer is an agent).

for deprivations of constitutional or civil rights.  Marshall v. Columbia Lea Regional Hosp. et al.

345 F.3d 1157 10th Cir. 2003) (citing Monell v. Department of Soc. Servs., 436 U.S. 658, 690

(1978)).  A government entity, however, cannot be held liable for the actions of its employees

under the theory of *respondeat superior*.  Id. (citing Monell, 436 U.S. at 691). Plaintiffs seeking

to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom"

causing their injury.  Id. (citing Board of County Com'rs v. Brown, 520 U.S. 397, 403 (1997)

(citing Monell, 436 U.S. at 694) (other citation omitted). "Policy" or "custom" can be identified in

any of three ways: (1) an express policy that, when enforced, causes a constitutional deprivation,

(2) a widespread practice that, although not authorized by written law or express municipal

policy, is so permanent and well settled as to constitute a custom or usage with the force of law,

or (3) an allegation that the constitutional injury was caused by a person with "final policymaking

authority." Boyer v. Board of County Com'rs of County of Johnson County, 922 F.Supp. 476,

488 (D.Kan. 1996) (citing Monell, 436 U.S. at 690; City of St. Louis v. Praprotnik, 485 U.S. 112,

127 (1988) (plurality opinion)); and Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)

(plurality opinion).  Plaintiffs base their claims against the Board on this last theory.[6]

        Actions taken by a final decisionmaker could make both the Board and Board Defendants

liable, regardless of whether the Board members were found to be individually liable.  See Parrish

-----

        [6] Plaintiffs agree with Defendants that School Board liability based on policy is not at
issue.  See Monell, 436 U.S. at 690 (describing municipal "policy" as a "policy statement,
ordinance, regulation, or decision officially adopted and promulgated by [the municipality's]
officers. . . ."). However, if the alleged adverse actions are meant to constitute a municipal
"custom," I am not convinced that the scope and breadth of the acts alleged can be described as
"persistent and widespread discriminatory practices of state officials . . . . . . not authorized by
written law." Id. at 691 (defining municipal "custom"); see also Pembauer v. City of Cincinnati,
475 U.S. 469, 481-82 n.10  (1986) (final policy-making authority not necessary to demonstrate
where the challenged action was taken pursuant to municipal custom).

v. Luckie, 963 F.2d 201 (8th Cir. 1992) (public entity or supervisory official may be liable under §

1983 even though no government individuals were personally liable) (citing Pembaur v. City of

Cincinnati, 475 U.S. 469, 484-85 (1986) and Garcia v. Salt Lake County, 768 F.2d 303, 310

(10th Cir. 1985) ("Monell does not require that a jury find an individual defendant liable before it

can find a local governmental body liable").  The School Board's liability depends on whether

Plaintiffs are able to show that a Defendant or Defendants who violated their civil rights is in fact

a final policymaker for the allegedly adverse actions taken.  See, e.g., Gernetzke v. Kenosha

Unified School Dist. No. 1, 274 F.3d 464, 469 (7th Cir. 2001) (in claim against school district,

plaintiff was required to show that the district itself, i.e., individuals with "relevant final

decisionmaking authority" violated her constitutional rights; it was not enough to show "merely

that the superintendent of the district and the principal of their school. . .  deprived the plaintiffs of

religious liberty") (citing McMillian v. Monroe County, 520 U.S. 781, 784-85 (1997)); Jantz v.

Muci, 976 F.2d 623 (10th Cir. 1992) (plaintiff who was denied position by school principal based

on perceived "homosexual tendencies" did not trigger claim against school board where final

hiring authority rested in school board under Kansas law, and where board was not authorized by

statute to delegate hiring authority).

Defendants appear to concede that at least some of the alleged actions suffered by

Plaintiffs are "potentially actionable adverse employment actions."  Reply at 3.  Defendants argue,

however, that because the Superintendent Defendants (Besett, Mortensen and Nicholson) took

those actions, the Board and Board Defendants are off the hook, so to speak.  Defendants

obviously have overlooked the core feature of the "final policymaker" theory of municipal

liability.  Their argument collapses in the face of Plaintiffs' proposed theory of liability, which is

that final decisionmaking authority for the administration of the school district, including hiring
and firing, fell within the duties of the School Superintendent, Besett.  As discussed above, a
governmental body will only be held liable for the results of decisions made by the final
policymaker, as defined by state law.  Jett v. Dallas Indep. Sch. Dist, 491 U.S. 701, 736-38
(1989),  cited in Ware v. Unified School District No. 492, 902 F.2d 815 (10th Cir.1990).
Plaintiffs contend that NMSA 1978, § 22-5-14 confers such decisionmaking authority to the
Defendant School Superintendent and her Assistants.

Section 22-5-14 states in part:  "B. The local superintendent shall:(1) carry out the
educational policies and rules of the state board and local school board; (2) administer and
supervise the school district; (3) employ, fix the salaries of, assign, terminate or discharge all
employees of the school district;. . . ." This law was in effect at the time Besett decided to
terminate Deschenie.  Instead of rebutting whether the statute actually confers final authority to
the Superintendent, Defendants merely allow for the possibility that it does.  Reply at 5 ( "even
though the Superintendent may arguably possess final policymaking authority for personnel
matters. . . ").[7]  I am therefore inclined to accept Defendants' decision not to dispute Plaintiffs'
supported contention as tacit agreement.  Since it is undisputed that Besett is the final
decisionmaker or policymaker for personnel matters in the school district, Besett's actions would
in fact bind the School Board.

---

[7] Where decisions are reviewable by others, the individual making those decisions does
not have final decisionmaking authority.  See, Dill v. City of Edmond, Okl.,155 F.3d 1193 (10th
Cir. 1998), Ware, 902 F.2d at 818-19.  Defendant does not even suggest that the
Superintendent's decisions were subject to further review by the Board.

A.    Claims of Plaintiffs Deschenie and Todacheene

Besett took allegedly adverse actions against both Deschenie and Todacheene:  Besett conducted an unscheduled reevaluation of Deschenie's work performance; Besett accused Deschenie of making false statements and mismanagement of IEC funds; Besett reprimanded Deschenie and had Deschenie's attendance at IEC meetings and statements made monitored by Deschenie's immediate supervisor; Besett reprimanded Todacheene for her statements to Manning which defended bilingual education; Todacheene was prohibited from taking professional leave to speak at educational meetings and was moved from her position as principal to an administrative position which was created for her; both Deschenie and Todacheene were put on "growth plans" and threatened with further disciplinary action (Deschenie was threatened with termination).[8]  Without passing on the merits of whether all of these actions were adverse, it is clear that Deschenie and Todacheene have sufficiently alleged employment actions carried out by Besett, which, if found to be adverse actions, could trigger liability on the part of the School Board since they were carried out by a final policymaker for the school district.

B.    Claims of Plaintiffs Atcitty and Emrick

Defendants read Plaintiffs' response as essentially eliminating the First Amendment claims of Atcitty and Emrick.  The Court agrees partially with that assessment.  Plaintiffs' argument and analysis in the response is limited to only Deschenie and Todacheene, and never mentions the other two Plaintiffs.  Atcitty's assertions are directed against Mortensen only and there is no

---

[8]  The Amended Complaint specifies that Besett was responsible for the "growth plan" for Deschenie and for threatening her with termination.  The pleading does not specify who took these actions with regard to Todacheene, as well as prohibiting her from taking professional leave and removing her as principal, but until further clarified, the Court assumes it was also Besett for purposes of this motion, until further clarified.

13

inference that either Besett or the Board Defendants had a hand in any allegedly adverse action taken.  Atcitty identified Mortensen as the individual who reprimanded and rebuked her, and prohibited her from serving on boards or committees. Therefore, claims against the Board and Board Defendants in their official capacities asserted by Atcitty will be dismissed.

Actions allegedly taken against Emrick are stated in the passive tense in the Amended Complaint (e.g., "Plaintiff Emrick was put on a "growth plan"), so it is possible that Besett took those actions.  While it is just as likely that the allegations are meant to be directed at one of the Assistant Superintendents, the standard for dismissal under Fed.R.Civ.P. 12(b)(6) requires that I accept as true all the factual allegations in the complaint, construe them in a light most favorable to the plaintiff, and resolve all reasonable inferences in Plaintiff's favor. See, Seamons v. Snow, 84 F.3d 1226, 1231-1232 (10th Cir. 1996).  Therefore, Defendants' motion is denied with regard to Emrick's claims against the Board and the Board Defendants in their official capacities, since Emerick has for now made sufficient threshold assertions which can considered assertions against a final policymaker.[9]

## III.    Liability of Individual Board Defendants

Regardless of whether the School Board is liable under Monell, the individual Board Defendants may be liable for their own actions because they are also sued in their individual

---

[9]  Defendants do not make clear on what basis they seek dismissal on the several issues they raise. On issues where the Court considers matters outside the pleadings, e.g., arguments relating to "final policymaker," the motion is treated as one for summary judgment pursuant to Rule 56.  See Fed. R. Civ. P. 12( b); Black Hills Aviation, Inc. v. U.S, 4 F. 3d 968, 972 (10th Cir. 1994).  Where the present motion offers no additional evidence outside the pleadings, the Court's determinations are based on Rule 12(b)(6), e.g., when considering the sufficiency of the assertions by Plaintiffs Atcitty and Emrick with regard to the Board Defendants, and by all the Plaintiffs with regard to the Board Defendants in their individual capacities.

14

capacities.  See, Meade v. Grubbs, 841 F.2d 1512, 1527-27 (10th Cir. 1988) (affirmative link

must be established between alleged constitutional deprivation and any conduct by defendant); see

also, Cameli v. O'Neal, 1997 WL 351193 (N.D.Ill. 1997) (evidence of defendant's racially

derogatory statements were such that a reasonable jury could find that defendant's decision to fire

plaintiff was based on race, even though school board's approval of defendant's decision was not

sufficient to show defendant's individual liability for allegedly terminating plaintiff based on race).

In their individual capacity, the Board Defendants would still be protected by the doctrine of

qualified immunity. See, Owen v. City of Independence, 445 U.S. 622, 638 (1980) (municipalities

not entitled to defense of qualified immunity); Schmidt v. Oakland Unified School District, 662

F.2d 550, 553 (9th Cir.1981) ("School board members are entitled to a qualified immunity from

money damages in section 1983 actions, for actions taken in good faith") (citation omitted),

judgment vacated on other grds, 457 U.S. 594 ( Jun 21, 1982), cited in Puffer v. Raynolds, 761

F.Supp. 838 (D.Mass.,1988).

Defendants have asserted the defense of qualified immunity.   However, Defendants

themselves answer the question of whether the relevant law was clearly established, recognizing

that the Tenth Circuit has held that actions short of an actual or constructive employment decision

can in certain circumstances violate the First Amendment.  Schuler v. City of Boulder, 189 F.3d

1304, 1309-10 (10th Cir.1999); see Reply at 2.  Defendants' argument is not that Plaintiffs did

not suffer adverse actions, but (acknowledging that they *could* have) argue instead that the

Superintendent Defendants carried out the actions, and therefore the Board and Board Defendants

are not liable.  In my discussion above, I have already dispensed with that notion.  An action by

the School Superintendent does not necessarily eliminate liability for the Board and Board

Defendants if Besett is a final policymaker for the CCSD.  What is left is the question of whether any allegedly adverse actions were taken against Plaintiffs by any of the individual Board Defendants.  If so, then Plaintiffs' claims against those Board Defendants in their individual capacities are viable claims.  I note that the only issue raised in the present motion concerns whether claims against the Board and Board Defendants should remain in the lawsuit.  I do not address the integrity or merit of those claims.

A.      Plaintiffs Deschenie and Todacheene

       In the Amended Complaint, Deschenie makes allegations against Manning and Ray, but not King.  In the context of Deschenie's assertions, only Mortensen is actually mentioned in the Complaint.  There are also generic references to "Defendants" who carried out specific acts -- which the Court cannot at this point assume does not include any of the Board Defendants.  In her affidavit dated March 15, 2004, Deschenie states that King participated in criticizing her in letters to the newspaper and that Ray told Deschenie that she should not write to the newspaper, and that if she expressed further criticisms of the School Board, she would be terminated.  Affidavit, ¶ 5.[10]  Deschenie does not allege that the Board Defendants actually implemented the allegedly adverse actions.  However, the actions took place in close temporal proximity to what was described as heated confrontations with the Board Defendants at various meetings, particularly with Manning and Ray.

       The mere temporal proximity of a plaintiff's protected speech to an adverse action is

---

[10]  The naming of King in the affidavit is not critical to the sufficiency of the allegations in the Amended Complaint.  While a more specific identification of individuals would have been desirable, the pleading meets the preliminary requirements to withstand dismissal of Plaintiffs' claims against King under Rule 12(b)(6).

insufficient, without more, to establish retaliatory motive.  See, Butler v. City of Prairie City, Kan., 172 F.3d 736, 744 (10th Cir. 1999).  However, given the animus between Plaintiffs and the Board Defendants and given the Board Defendants' involvement in, and personal feelings about, the issues on which Plaintiffs spoke out, retaliatory animus can be inferred from the facts in this case.  For example, allegedly adverse actions happened to Deschenie less than two weeks after harsh and rebuking comments directed against her by the Board Defendants.  According to Deschenie, prior to the meeting at which she was verbally attacked, she had been promised that she would be allowed to hire two additional positions.  Instead, her own job duties were changed.  Deschenie attributes the change to communications between the Board Defendants and Besett, and a reasonable juror could agree.  Therefore, Deschenie has made sufficient allegations against the Board Defendants in their individual capacity to withstand dismissal under Rule 12(b)(6).

Todacheene specifically refers only to Mortensen.  Again, however, allegedly adverse incidents occurred soon after a retreat at which Manning was present.  Todacheene was informed by Mortensen that the "Defendant Board" was displeased with her and was "considering reassigning" her.  Amended Complaint, ¶ 54.  The allegations portray Mortensen as a messenger for the Board Defendants.  A fact finder could infer from the chronology of events that the Board Defendants were instrumental in manipulating, influencing or suggesting that Todacheene be reprimanded and prohibited from taking leave for speaking engagements, which later occurred.

B.    Plaintiffs Atcitty and Emrick

Atcitty's allegations center around her taking personal leave to attend an inauguration of Navajo Nation President Joe Shirley, and are limited to the subsequent actions taken by Mortensen.  I can find no circumstantial evidence from which a jury could infer involvement of

any kind by any of the Board Defendants.  Therefore, Atcitty's claims against the Board

Defendants in their individual capacities will be dismissed.

In the Amended Complaint, Emrick stated that Manning, as Business Manager, met with

Besett, and afterward told Emerick that the CCSD administration was going to "divert the funds

to other purposes 'anyway.'"  Amended Complaint ¶ 62.  Emerick's other allegations concern only

Nicholson.  Even a liberal reading of those allegations does not support an inference of  improper

motive or conduct by any of the Board Defendants. Although Emrick attended a work session of

the School Board to "air her concerns about the use of designated funds to supplant other funds,"

and within a few days was put on a "growth plan," the mere proximity of the alleged adverse

action is not enough to suggest impermissible conduct or motive on the part of any of the Board

Defendants.  Unlike Deschnie's situation, the pleadings and evidence do not describe any negative

interaction or animus between Emrick and any of the Board Defendants during the relevant time

period.

For the foregoing reasons, allegations against the Board Defendants in their individual

capacities are sufficient only as to allegations by Deschenie and Todacheene.  Similar claims by

Atcitty and Emrick will be dismissed.

## III.    Legislative Immunity

Defendants contend that they have absolute legislative immunity which bars Plaintiffs'

claims.  Plaintiffs are correct in characterizing Defendants' argument as misplaced, in that

legislative immunity does not apply to personnel management activities taken with regard to

individual employees.  Kamplain v. Curry County Bd. of Commissioner, 159 F.3d 1248 (10th Cir.

1998).  The actions which Defendants allegedly took are not legislative actions.  Id. at 1251

18

(Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.").  Also, because Defendants do not address Plaintiffs' comments in their reply, I assume Defendants have waived the issue.   Therefore, Defendants' motion is denied on the issue of legislative immunity.

## IV.   Plaintiff Deschenie's Due Process Claims

Deschenie asserts violations of the Fourteenth Amendment based on violations of due process.  She contends that Defendants made false representation to be made to the public and her coworkers which stigmatized her reputation.  She also contends that she was demoted without notice or an adequate hearing.

A.   Due Process - Property

A plaintiff must allege a deprivation of a sufficient property or liberty interest to invoke the protection of the Due Process Clause.  Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972); Lybrook v. The Members of the Farmington Municipal Schools Board of Education, 232 F.3d 1334, 1341 (10th Cir. 2000).  Even assuming that Deschenie had a property interest in continued employment (an issue which parties do not briefs and the Court need not address), this claim can be summarily dismissed.  Deschenie bypassed a state procedural remedy that was available to her after receiving a notice of termination, under NMSA 1978 § 22-10A-27.[11]  See, Albright v. Oliver, 510 U.S. 266, 283 (1994) (J. Kennedy, J. Thomas, concurrence)  (state actor's random and unauthorized deprivation of procedural due process cannot be challenged under 42

---

[11]  Section  22-10A-27 states in part: "B. A certified school employee who receives a notice of intent to recommend discharge pursuant to Subsection A of this section may exercise his right to a hearing before the local school board or governing authority by giving the local superintendent or administrator written notice of that election within five working days of his receipt of the notice to recommend discharge."

U.S.C. § 1983 so long as the state provides an adequate post-deprivation remedy) (citing Parratt v. Taylor, 451 U.S. 527 (1981)).  Further, Deschenie does not rebut Defendants' statements that she did not request a hearing before the Board to challenge her termination.  Having failed to do so, she cannot now claim Defendants violated her due process rights.  See Pitts v. Bd. of Educ of U.S.D. 305, Salina, Kansas, 869 F.2d 555, 557 (10th Cir. 1989) (Failure of plaintiff to permit defendant to provide any due process by resigning eliminates the claim).

B.    Liberty Interest

Deschenie also contends that Defendants violated her liberty interests under the due process clause because the false representations they allegedly made stigmatized her reputation. This claim also fails.

Injury to reputation alone is not a deprivation of a liberty interest.  Siegert v. Gilley, 500 U.S. 226, 233-34 (1991); Paul v. Davis, 424 U.S. 693, 709 (1976).   Deschenie does not show more than that, if such injury indeed exists.  In order to show that Defendants infringed on her liberty interest, Deschenie must show that (1) statements were made that impugn her good name, reputation, honor, or integrity; (2) the statements were false; (3) the statements occurred in the course of terminating the employee or foreclosed other employment opportunities; and (4) the statements were published.  These elements are not disjunctive, all must be satisfied to demonstrate deprivation of a liberty interest.  Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 578  (10th Cir. 1996) (citations omitted).  In this case, there is no indication or evidence that any of these statements occurred in the course of terminating Deschenie or foreclosed his employment opportunities, even if all the other factors were present.

20

## CONCLUSION

On claims against the Board Defendants in their official capacity: (1) Deschenie and Todacheene have sufficiently alleged employment actions carried out by Besett, which, if found to be adverse actions, could trigger liability on the part of the School Board since they were carried out by a final policymaker for the school district; (2) Construing Emrick's assertions in the Amended Complaint in her favor, I conclude that Emrick has made sufficient threshold assertions which can considered assertions against a final policymaker; and (3) Attcity's allegations do not contain any inference that either Besett or the Board Defendants had a hand in any allegedly adverse action taken.

On claims against the Board Defendants in their individual capacities: (1) The pleadings assert facts from which a reasonable fact finder could believe that Board Defendants acted with a retaliatory motive against Deschenie and Todacheene; (2) Atcitty and Emrick have not made allegations against the individual Board Defendants, nor does Plaintiffs' response suggest otherwise.

Defendants are not entitled to absolute legislative immunity because none of the actions any of them took were legislative in nature.

Deschenie's Due Process claims are without merit, both with regard to a lack of notice, and with regard to her alleged deprivation of liberty interest.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment and Motion to Dismiss (**Doc. 9**) is DENIED IN PART AND GRANTED IN PART as follows:

1.      With regard to liability of the School Board or of the Board Defendants in their

official capacities:

      a.      Defendants' motion is DENIED as to claims asserted by Deschenie,

        Todacheene and Emrick;

      b.      Defendants' motion is GRANTED as to claims asserted by Atcitty;

2.      With regard to liability of the Board Defendants in their individual capacities:

      c.      Defendants' motion is DENIED as to claims asserted by Plaintiffs

        Deschenie and Todacheene;

      d.      Defendants' motion is GRANTED as to claims asserted by  Atcitty and

        Emrick;

3.      Defendants' motion is DENIED on the issue of whether the Defendants are

entitled to legislative immunity;

4.      Defendants' motion is GRANTED as to Deschenie's due process claims in their

entirety.

 

 

_____

UNITED STATES DISTRICT JUDGE