IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

QUINTINA DESCHENIE,
GLORIA JEAN TODACHEENE, and
PATRICIA EMRICK,

      Plaintiffs,

v.                                                                   Civil No. 03-1226 WJ/DJS

BOARD OF EDUCATION OF CENTRAL
CONSOLIDATED SCHOOL DIST. NO. 22,
RANDY J. MANNING, individually and in his
capacity as School Board President,
GARY D. RAY, individually and in his
capacity as School Board Vice President,
STANLEY R. KING, individually and in his
capacity as School Board Secretary,
LINDA BESETT, individually and in her
capacity as Superintendent of Schools,
JAY MORTENSEN, individually and in his
capacity as Assistant Superintendent of Schools, and
DENNIS NICHOLSON, individually and in his
capacity as Assistant Superintendent of Schools,

      Defendants,

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT AS TO PLAINTIFF EMRICK

THIS MATTER comes before the Court upon the Motion for Summary Judgment as to Claims of Plaintiff Emrick, filed by Defendants Board of Education of Central Consolidated School Dist. No. 22, Randy J. Manning, Gary D. Ray, Stanley R. King, Linda Besett, Jay Mortensen and Dennis Nicholson on January 10, 2005 **(Doc. 81)**.  Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendants' motion is well-taken and shall be granted.

### BACKGROUND

Plaintiffs in this case are present and former employees at Central Consolidated School

District ("CCSD"), which is located largely within the Navajo Indian Reservation. Plaintiffs allege that Defendants have engaged in a policy and practice of discouraging or preventing speech which questions the use of funds designated for Navajo bilingual or special education or which questions CCSD's compliance with program requirements or use of program funds. The instant motion seeks dismissal of Plaintiff Emrick's First Amendment claim against Defendants. Thus, this memorandum opinion and order addresses only those claims asserted against Defendants by Plaintiff Emrick.

## I. Procedural History

In a previous Order granting in part Defendants' summary judgment on issues of liability on the part of the Board of Education ("Board" or "School Board") and Board members, the Court narrowed each of the Plaintiffs' claims against specific Defendants. Doc. 31 (Mem. Opin. & Order, 5/26/04, "May 26th Order").[1] Defendants have filed summary judgment motions directed against the individual Plaintiffs, this being one of them. What remains for Plaintiff Emrick ("Plaintiff," for purposes of this motion) is a First Amendment claim against Defendant Linda Besett, Superintendent of Schools, in her official capacity, and against Ms. Besett and Mr. Nicholson, Assistant Superintendent, in their individual capacities. In addition, based on the Court's finding that Besett could be considered a final decisionmaker or policymaker for personnel matters in the school district, Plaintiff's claim against the School Board survived Defendants' previous summary judgment motion. See, Doc. 31 at 12.

Defendants have apparently construed the Court's May 26th Order to leave open the question of whether Plaintiff's claims against the Board may also be based on actions taken by

---

[1] Plaintiff Fannie L. Atcitty has been dismissed from this action by stipulation of the parties. See, Doc. 43. The caption reflects the stipulated dismissal of third-party plaintiffs and defendants. See, e.g., Docs. 79, 80, 89.

2

Mr. Nicholson in his official capacity. Citing Dill v. City of Edmond, Okla.,155 F.3d 1193 (10th Cir. 1998), Defendants argue in the instant brief that Mr. Nicholson can not be considered a final policymaker because his decisions as an assistant superintendent are subject to review. The language of the Court's May 26th Order was explicit that it was Ms. Besett's actions which could bind the School Board, under applicable New Mexico law, N.M.S.A. 1978 § 22-5-14. Further, the Court agrees with Defendants' position regarding Mr. Nicholson. Thus, the issue of liability on the part of the School Board is confined only to the actions of Ms. Besett.

**II.     Factual History**

The Court sets out the facts according to what is undisputed by the parties, and where disputed, in a light most favorable to Plaintiff as the non-moving party. Reed v. McKune, 298 F.3d 946, 949 (10th Cir. 2002). Plaintiff was the Director of Exceptional Programs at CCSD at the time relevant to the assertions in the complaint. She alleges three instances where she engaged in protected speech, which was met with retaliatory conduct by Defendants:

(1) In the spring of 2002, Mr. Manning, who was the CCSD Executive Director of Finance as well as Board President, informed Ms. Emrick that the CCSD administration was imposing a limit on expenditures for special education and bilingual education programs. Plaintiff expressed concern to Mr. Manning that he was using an improper method of calculating money to be spent on the bilingual and special education programs. Plaintiff disputes Defendants' characterization of these concerns as a one-time event, and asserts that she "continuously and vigorously objected to the Superintendent's decision to cut funds for exceptional programs to less than the amount of funding the District received for those programs." Response at 2.

(2) On October 23, 2003, Ms. Emrick attended a public meeting held by the Indian Affairs Committee of the state legislature because of concerns related to CCSD. It is undisputed

3

that Plaintiff did not speak at this meeting.   Plaintiff bases her claim of retaliation for her attendance at this meeting on her First Amendment rights of association and petition.

(3)  On November 13, 2003, at a work session of the School Board, Emerick aired her concerns about the use of designated funds to supplant other funds at a work session of the School Board.  Plaintiff describes her presentation at this meeting as a disagreement with Mr. Manning regarding the calculation of revenues generated.

Plaintiff contends that due to her attendance at that meeting, and because of her expressed concern about the use of funds, she was perceived as a critic of the administration.  She alleges that the following retaliatory acts occurred:

(1)  On October 27, 2003, an additional goal was added to her professional refinement plan (as explained later in the discussion, the actual date the goal was added was November 3, 2003).

(2)  On November 5, 2003, Mr. Nicholson, left meetings on two occasions "on the pretext" that Ms. Emrick had offended him, when in fact she had "simply been participating in discussion in the meetings, and had not said anything personally offensive."  Amended Complaint, ¶66.

(3) On or about November 14, 2003, Nicholson was assigned to assist Marlene Frazier, Plaintiff's immediate supervisor, in supervising Plaintiff.

(4) On November 17, 2003, Ms. Emrick was put on a "growth plan" and threatened with further disciplinary action including termination.

(5)  On February 26, 2004, Ms. Emrick attended a meeting with Nicholson, Besett and Frazier, at which time Ms. Frazier presented notes stating that Plaintiff was "confrontational and oppositional."

4

Plaintiff contends that having two supervisors assigned to her was a form of retaliation. Defendants also maintain that Ms. Emrick was placed on a "growth plan" for reasons that were legitimate and non-discriminatory and were unrelated to her speech. Ms. Emrick contends that this action was taken in retaliation for the concerns she voiced at the October 23rd meeting, and the November 13th School Board work session.

Defendants seek dismissal of Plaintiff's claims on several grounds: that Ms. Emrick's "speech" was not protected by the First Amendment; that she did not suffer an adverse employment action; and that Plaintiff cannot show a causal relationship between the alleged speech and any adverse action. For reasons given below, I find that Defendants are entitled to summary judgment on the grounds that Plaintiff did not suffer an adverse action. In the alternative, the individual Defendants are entitled to qualified immunity because the law was not clearly established at the time Plaintiff experienced these actions that they would be considered adverse for purposes of a First Amendment claim.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Moya v. U.S.A. et al, 35 F.3d 501, 503 (10th Cir. 1994), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In applying this standard, the Court construes all inferences arising from the record in favor of the nonmovant. Stinnett v. Safeway, Inc., 337 F.3d 1213, 1216 (10th Cir. 2003). The nonmovant must establish, at a minimugm, "an inference of the existence of each element essential to her case." Hulsey v.

5

Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)).

The individual Defendants have asserted the defense of qualified immunity.[2]  Some special rules apply when a defendant's claim for summary judgment is based on qualified immunity. Gehl Group v. Koby, 63 F.3d 1528, 1535 (10th Cir. 1995).  Once the defense of qualified immunity is raised, the plaintiff bears the burden of establishing that the defendant has violated clearly established law.  Hovater v. Robinson, 1 F.3d 1063, 1066 (10th Cir. 1993).  To reach the question of whether a defendant official is entitled to qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at all. Martinez v. Mafchit, 35 F.3d 1486, 1490 (10th Cir. 1994).  This requires the district court to first determine whether the plaintiff's allegations, if true, state a claim for a constitutional right that was clearly established at the time the defendant acted.  Bisbee v. Bey, 39 f.3d 1096, 1100 (10th Cir. 1994). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Once the plaintiff makes the required showing, the public official assumes the usual summary judgment movant's burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Hinton v. City of Elwood, Kan., 997 F.2d 774, 779 (10th Cir. 1993) (cited in Howard v. Dickerson, 34 F.3d 978 (10th Cir. 1994); Fed.R.Civ.P. 56(c).  Specifically, the public official must show that no material issues of fact

---

[2] The defense of qualified immunity is not available to entities, such as a school board, based on the good faith of its members. See,Key v. Rutherford et al,l645 F.2d 880, 883 (10th Cir.1981); Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000) (Qualified immunity is not available as a defense to municipal liability) (citing Owen v. City of Independence, 445 U.S. 622, 638 (1980)).

remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## DISCUSSION

To prevail on her claim of retaliation, Plaintiff must prove that (1) her speech is protected under the First Amendment and (2) the speech was a substantial or motivating factor behind the adverse employment decision. Conaway v. Smith, 853 F.2d 789, 795 (10th Cir.1988) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Once Plaintiff meets that burden, Defendants may avoid liability by showing that they would have made the same decision in the absence of the protected activity. Childers v. Independent Sch. Dist. No. 1 of Bryan County, Okla., 676 F.2d 1338, 1341 (10th Cir.1982).

A considerable part of the required analysis is unnecessary in this case. As will be explained in the discussion to follow, Plaintiff cannot show that the actions taken by either Ms. Besett or Mr. Nicholson were sufficiently adverse to be considered a violation of Plaintiff's First Amendment rights. Even assuming that those actions, separately or in combination, were adverse employment actions, the law was not sufficiently clear such that Defendants would have reasonably understood that their actions violated Plaintiff's rights. Thus, the Court need not address whether Plaintiff's speech is protected or whether there is a causal connection between protected speech and actions taken, since even assuming Plaintiff satisfactorily meets both factors, there cannot be a First Amendment violation if Plaintiff did not suffer an adverse employment action. See, Lybrook v. The Members of the Farmington Municipal Schools Board of Education, 232 F.3d 1334, 1339 (10th Cir. 2000) (declining to address first prong of whether plaintiff's speech implicates public concern where plaintiff failed to satisfy requirement that she was

7

subjected to adverse or detrimental employment decision").

I.	WHETHER ADVERSE EMPLOYMENT ACTIONS WERE TAKEN

The Tenth Circuit liberally defines the phrase "adverse employment action," Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998) and takes a case-by-case approach in determining whether a given employment action is adverse. Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998). There are deprivations less harsh than dismissal that will be considered adverse or detrimental employment actions in violation of an employee's First Amendment rights. Schuler v. City of Boulder et al, 189 F.3d 1304 (10th Cir. 1999). However, the Tenth Circuit has never ruled that "all such acts, no matter how trivial, are sufficient to support a retaliation claim." Lybrook v. The Members of the Farmington Municipal Schools Board of Education, 232 F.3d 1334, 1340 (10th Cir. 2000). In other words, Schuler left open the possibility that "there may be some minor adverse actions that would not constitute First Amendment violations." Id., 232 F.3d at 1340.

A.	Nicholson's Departure from Meetings, Adding Supervisor, Criticism of Plaintiff

Two of the acts performed by Defendants can be summarily rejected as potential adverse actions for First Amendment purposes. Mr. Nicholson's exits from meetings on November 5, 2003, and the assignment of Mr. Nicholson to assist Ms. Frazier in Plaintiff's supervision are appropriately categorized as examples of trivial acts which are insufficient to support a First Amendment claim. See, Keirsey v. Diamond, 145 F.3d 1345 (10th Cir. 1998) (the actions complained of must be sufficiently substantial to present an actual or potential danger that an employee's speech will be chilled).

Plaintiff was also allegedly criticized during a meeting on February 26, 2004 which was attended by Plaintiff, Ms. Frazier, Mr. Nicholson and Ms. Besett for being "confrontational and

8

oppositional." In Hardeman v. City of Albuquerque, et al., 377 F.3d 1106 (10th Cir. 2004), the Tenth held that public criticism of a government employee was not an adverse action. Id. at 1118-19 ("We have never found a First Amendment violation on the basis of disparaging comments alone"). Thus, Defendants' conduct at the meeting with Ms. Emrick, which was *not* a public meeting, cannot be considered adverse. See also Lee v. N.M. Bd. of Regents, 102 F.Supp.2d 1265, 1275 (D.N.M. 2000) (verbal admonishment is not adverse employment action) (citation omitted); Phelan v. Laramie County Community College Bd. of Trustees, 235 F.3d 1243, 1245 (10th Cir. 2000) (finding that Board's censure regarding plaintiff's placement of an advertisement in local paper encouraging the public to vote against the measure did not infringe any of plaintiff's free speech rights because it did not punish her for exercising these rights, nor would it deter her future speech). Two more alleged retaliatory acts concerning Plaintiff's evaluations remain to be considered.

B.      Plaintiff's Evaluations

Two of the five alleged retaliatory acts taken by Defendants concerned evaluations received by Plaintiff. The standard evaluation form lists fifteen skill categories, with a possible score of "1" or "2" for each category, "1" being Unsatisfactory, and "2" being Satisfactory. A rating of "1" requires that a Growth Plan be developed. A rating of "2" requires that a Refinement Plan be developed. The form would seem to require a Growth Plan regardless of whether the employee received a single rating of 1 or whether the employee received ratings of 1 in all 15 categories.

*October 24, 2003 annual evaluation*

In her October 24, 2003 annual evaluation, Plaintiff received a rating of "2" for all fifteen categories. The Refinement Plan which accompanied that evaluation listed three goals:

9

- Continue to work on goal one from 10/20/02 Refinement Plan: Decrease the over-identification of students as having a learning disability.

- Work with Gifted Program Specialist to improve the quality of programs for gifted students.

- Implement Dynamic Indicators of Basic Early Literacy Skills (DIBLES) as curriculum based assessment.

Plaintiff's Ex. 2 attached to Frazier Deposition.

*November 3, 2003 evaluation (date alleged as October 27, 2003)*

A few days after the annual evaluation, Ms. Frazier approached Plaintiff and informed her that she needed to schedule another meeting concerning Plaintiff's supervision. Emrick Dep. at 11. According to Ms. Frazier, due to the chemotherapy treatment she was receiving at the time, she had forgotten to include her own goal to Plaintiff's October 24th Refinement Plan, and to the Refinement Plans of other employees she supervised.[3] Ms. Frazier stated that she added one of her own goals to other employee's goals, although she could not say that she added the same goal to all of them. Ex. 10 at 18-19. On November 3, 2003, Ms. Frazier met with Plaintiff and added a fourth goal to Plaintiff's Refinement Plan: "Work productively [with] administrators, supervisors, staff, students, parents & community members." Defts' Ex. 11. Plaintiff does not allege, nor is there evidence, that Ms. Frazier added a goal only to Ms. Emrick's Refinement Plan, or that either Defendants Nicholson or Besett had anything to do with Ms. Frazier's decision to do so. What is critical is that Plaintiff's November 3rd evaluation was again rated "1" for all fifteen categories, which is the highest score an employee can receive. I find that there is simply

---

[3] Ms. Frazier stated that she was going through chemotherapy for Stage III cancer and was sick much of the time. Ex. 10: 43-44. Ms. Frazier's statement that she was having trouble at the time with dates as well seems to be supported by some evidence. For example, the November 3rd evaluation is dated "11/03/04" at the top of the page, although Plaintiff dated it correctly -- "11/03/03" – with her signature at the bottom of the page. Ex. 11.

10

nothing adverse in an evaluation where an employee receives the highest rating possible.

*November 17, 2003 evaluation*

On November 17, 2003, Mr. Nicholson placed Ms. Emrick on a Growth Plan because of her behavior, citing Ms. Emrick's conduct on November 13th at the school board work meeting when she "verbally attacked" Mr. Manning. Frazier Dep., attachment 9. On the evaluation form which corresponded with the Growth Plan, Plaintiff received a rating of "2" for twelve categories, and a rating of "1" for three categories: "Utilizes effective people skills to communicate," "Demonstrates an understanding of the dynamics of the educational organization," and "Works productively with administrators, supervisors, staff, students, parents and community members." Frazier Dep., attachment 9. Ms. Frazier signed the evaluation form. Both Mr. Nicholson and Ms. Frazier signed the Growth Plan. The Growth Plan mentions that on November 14th, Mr. Nicholson and Ms. Frazier went to Plaintiff's office to discuss her behavior at the work meeting, but that Plaintiff refused to discuss this, and instead she told Mr. Nicholson and Ms. Frazier "I think I need an attorney."[4] The Growth Plan also contains this language: "Failure to successfully accomplish all elements in this Growth Plan *may* result in disciplinary action, which *may* include a recommendation for termination or discharge. Additional items may be added to this Growth Plan as needed." Frazier Dep., attachment 9 (emphasis added). However, other than this boilerplate language which does not offer anything other than the *possibility* of disciplinary action, Plaintiff offers no evidence that she was actually threatened with disciplinary consequences.

Although not mentioned at all by Plaintiff either in the Amended Complaint or in the response to summary judgment, Ms. Frazier updated the Growth Plan on May 11, 2004 by adding

---

[4] The original typed text states "I need to talk with my attorney," which is crossed out and substituted with a handwritten "I think I need an attorney."

11

another item to the Plan as follows:

> On April 23, 2004 while at the District Task Force you verbally attacked an administrator in a public setting, and you did not demonstrate effective problem solving strategies to resolve the questions discussed.

Defts' Ex. 19; Emrick Dep. at 46:17-19.  The corresponding evaluation form still showed only three out of fifteen categories rated as "1."  Defendant Nicholson did not sign the May 11th Growth Plan.

C.  Whether Evaluations Amount to Adverse Actions

I have already found that the addition of a fourth goal to Plaintiff's Refinement Plan on November 3, 2003 (alleged as October 27, 2003) is not an adverse action, since Plaintiff received the highest score possible on the evaluation form, and Refinement Plans (which contained goals) were required even with evaluations with perfect scores of "1." What remains is a finding on whether the November 17, 2003 evaluation, along with the May 11, 2004 update constitute an adverse action.

The Tenth Circuit has held that "deprivations less harsh than dismissal" can violate a public employee's rights under the First Amendment.  Schuler, 189 F.3d at 1309.  Schuler's analysis was founded on the holdings in Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), Dill v. City of Edmond, 155 F.3d 1193, 1205 (10th Cir.1998) and Morfin v. Albuquerque Pub. Schs., 906 F.2d 1434, 1437 n. 3 (10th Cir.1990).  These cases held, respectively, that hiring decisions conditioned on political belief and association violated a plaintiff's First Amendment rights in absence of a vital governmental interest, even though the action did not amount to termination of employment or the substantial equivalent of dismissal (Rutan); the transfer of a police officer from a detective position to patrol officer was adverse under the First Amendment (Dill); and a teacher's transfer to another school, as well as non-renewal of another teacher's

contract were adverse actions (Morfin).  In addition, the Tenth Circuit has acknowledged that

> although we have never delineated what actions constitute "adverse employment actions" in the First Amendment context, we have repeatedly concluded that a public employer can violate an employee's First Amendment rights by subjecting an employee to repercussions that would not be actionable under Title VII.

Baca v. Sklar, 398 F.3d 1210, 1220 (10th Cir. 2005) (citations omitted).   At the same time, the Tenth Circuit has "never ruled that *all* such acts, no matter how trivial, are sufficient to support a retaliation claim." Lybrook v. Members of the Farmington Municipal Schools Bd. of Educ., 232 F.3d 1334, 1340 (10th Cir. 2000) (emphasis supplied in the original) (noting that Schuler "left open the possibility that 'there may be some minor adverse actions that would not constitute First Amendment violations'").

The Court's analysis will proceed on the assumption that the November 17th Growth Plan can be characterized as a negative evaluation.  This is a liberal assumption, since Plaintiff received a "1" rating in only three out of fifteen categories and, as previously noted, the form itself requires a Growth Plan as long as at least one category is graded with a "1"rating.

While Schuler acknowledged the expansive view courts should use in determining whether alleged conduct is adverse under the First Amendment, the Court's holding in that case took into account the entirety of defendants' actions.  These actions were:  (1) removing plaintiff's job duties; (2) giving plaintiff a written reprimand; (3) giving plaintiff a low score on her performance evaluation, below that received by the janitor while he was suspended; and (4) involuntarily transferring plaintiff to another facility, although with the same title and responsibilities.  Thus, Schuler cannot be read to hold that each of defendant's actions in that case constituted an adverse action under the First Amendment.

Similarly, in Baca v. Sklar, the Tenth Circuit considered plaintiff's allegations as a whole in finding that plaintiff's "allegations, if true, could be found to constitute adverse employment

13

actions in the First Amendment context."  Defendant Sklar had allegedly retaliated against Plaintiff Baca, a state university employee by: (1) removing his supervisory duties over an employee, (2) deprived Baca of the opportunity to supervise an employee Baca had recruited, (3) encouraged other employees to bypass Baca and receive direct supervision from Sklar, thereby undermining Baca's supervisory duties, (4) issuing Baca a written reprimand in contravention of university protocol, and (5) filing a charge in the university's Office of Equal Opportunity and then using that charge to demand Baca's resignation.

Defendants rely on Lybrook to argue that Ms. Emrick did not suffer any adverse action under the First Amendment.  The situation of the plaintiff / teacher in Lybrook is more like Ms. Emrick's situation.  In Lybrook, as a result of complaints coming from four teachers concerning plaintiff, the school principal issued a "Professional Development Plan" (PDP) which required plaintiff to "[s]trive to create an atmosphere that will nurture collaboration with all colleagues" and to "conduct affairs with a conscious concern for the highest standards of professional commitment."  It is not clear whether the PDP issued to the plaintiff in Lybrook was accompanied by an evaluation, such as the one Ms. Emrick received.  However, the Lybrook plaintiff was required to meet with the principal every Monday morning as a condition imposed by the PDP.  Even so, the Tenth Circuit affirmed the district court's conclusion that the PDP and its consequences were of "insufficient gravity to premise a First Amendment violation."  232 F.3d at 1341.

Plaintiff relies on Hardeman v. City of Albuquerque, 377 F.3d 1106, 1118 (10th Cir. 2004) to support her position that she suffered an adverse action, although the Court fails to see how that case is helpful to Plaintiff.  First, the issue in Hardeman was whether disparaging comments allegedly made public by the plaintiff's employer to the news media constituted an

14

adverse action.  The holding in Hardeman may be helpful to a disposition on the issue of whether Ms. Emrick suffered an adverse action when she was criticized by her supervisors in the February 26, 2004 meeting (although not favorably to Plaintiff), but it does not provide any guidance regarding the November 17th evaluation and Growth Plan.   Second, the reasoning behind the holding in Hardeman only emphasized the legal ambiguity on the issue the Court was addressing.  The trial court in that case submitted a special verdict which asked the jury whether it found that the employer "made disparaging public comments about Plaintiff *and/or* deprived [her] of a post-termination contract based on her actual or perceived associations."  377 F.3d at 1118 (emphasis supplied in original).  The Tenth Circuit found that defendants had waived their argument regarding the "and/or" wording by failing to object at trial.  The Court then addressed the issue of disparaging comments as an adverse action.  In the final analysis, the Tenth Circuit acknowledged the "ambiguity in the case law," found that it was not "clear or obvious under current law" that disparaging comments actually violated the plaintiff's First Amendment rights, and for that reason declined to find clear error in the trial court's submission of this special verdict to the jury.  377 F.3d at 1119.  In fact, the Court expressly stated "[w]e have never found a First Amendment violation on the basis of disparaging comments alone."  377 F.3d at 1119.  Thus, the action taken in Lybrook against that plaintiff is much more closely aligned with Ms. Emrick's situation.

Although the Tenth Circuit liberally defines an "adverse employment action," its existence is determined on a case by case basis.  Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir.2000). While this Court recognizes that deprivations "less harsh than dismissal" can violate an employee's First Amendment rights, trivial acts also fall into that category, but are nevertheless not actionable under the First Amendment.  Otherwise, the universe of trivial acts would preclude qualified immunity.  For this reason, the examples found in Rutan, Dill, and

15

Morfin are inapposite to Ms. Emrick's situation because the actions taken in those cases are of a higher severity and magnitude.  In the instant case, Defendants have not performed a group of acts which as a whole can be considered to be adverse, such as happened in Schuler or Baca. Further, the performance evaluation in Schuler was clearly a negative appraisal.  The evaluation of plaintiff in Schuler was below the evaluation received by a janitor while he was suspended.  Ms. Emrick, on the other hand, still received a rating of "2," the highest possible score, in twelve out of fifteen categories even after the May 11th update by Ms. Frazier.  See, Fortner v. State of Kansas, 934 F.Supp. 1252 (D.Kan.1996), aff'd 122 F.3d 40 (10th Cir.1997) (performance reviews which are lower than previous reviews but still within satisfactory range do not constitute adverse employment actions), cited in Lee v. N.M. Bd. of Regents, 102 F.Supp.2d 1265, 1275 (D.N.M. 2000).

      Plaintiff has offered no evidence to dispute Defendants' contention that Mr. Nicholson had any connection to the May 11th update, nor is there any evidence that the November 17th Growth Plan and subsequent update came at the direction of Ms. Besett.  There is also no evidence that the Growth Plan resulted in any consequences to Ms. Emrick's duties or employment situation,. Ms. Emrick mentioned in her deposition that there were supposed to be biweekly meetings with Mr. Nicholson and Ms. Frazier as part of the Growth Plan, although they did not occur that frequently.  Emrick Dep. at 38.  Since the Tenth Circuit in Lybrook decided that weekly meetings required by a PDP do not rise to the level of an adverse action under the First Amendment, it would appear that Ms. Emrick has not suffered an adverse action either, whether the alleged adverse actions are considered separately or as a group.  None of the alleged actions, including the November 17th Growth Plan and its update, are sufficiently substantial "to present an actual

16

or potential danger than an employee's speech will be chilled." Keirsey,145 F.3d 1345).[5] Thus, even taking the facts alleged by Ms. Emerick as true, I conclude that her First Amendment claim fails as a matter of law because she has not shown that she suffered an adverse action which would entitle her to the protections of the First Amendment. See, Baca v. Sklar, 398 F.3d 1210, 1211 (10th Cir 2005) (an employee alleging retaliation must show that his employer took some adverse employment action against him) (citing Belcher v. City of McAlester, 324 F.3d 1203, 1207 n. 4 (10th Cir.2003) ("Implicit in the Pickering test is a requirement that the public employer have taken some adverse employment action against the employee.")).

II.   WHETHER DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even assuming that the actions taken against Ms. Emrick could be considered sufficiently adverse under the First Amendment (and by necessity assuming that either or both Mr. Nicholson or Ms. Besett were involved in directing or performing the actions), I find that these individual Defendants would enjoy the protections of qualified immunity.

The Court is first required to decide whether the plaintiff has alleged a viable constitutional claim. Siegert v. Gilley, 500 US 226, 231 (1991). Taking Ms. Emerick's allegations of retaliation as true, the Amended Complaint asserts the violation of a constitutional right. To overcome qualified immunity, a plaintiff must demonstrate that the right in question was clearly established at the time of defendant's conduct. Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988), the contours of the right must be so clear that

---

[5]   The Tenth Circuit in Kiersey cited a Seventh Circuit case and a Ninth Circuit case as examples: Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir.1989) (harassment not constitutional violation when so trivial "a person of ordinary firmness would not be deterred" from engaging in protected activity) and Allen v. Scribner, 812 F.2d 426, 434 n. 17 (9th Cir.1987) (harassment not constitutional violation when court can say as matter of law that exercise of First Amendment rights not deterred).

17

a reasonable official would have understood that what he or she was doing violated that right. Anderson v. Creighton, 483 U.S., 635, 640 (1987). A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir.1998) (quoting Anderson, 483 U.S. at 640). A plaintiff must show "the particular actions taken by the defendants were impermissible under the law established at that time." Brammer-Hoelter v. Twin Peaks Charter Academy, 81 F.Supp.2d 1090, 1100 (D.Colo., 2000) (citations omitted). The plaintiff need not show that the very action in question was previously held unlawful, but she must demonstrate that there is a Supreme Court or Tenth Circuit decision on point, or that the clearly established weight of authority from other courts is the law. Horstkoetter, 159 F.3d at 1278.

A.    Whether Individual Defendants are Entitled to Qualified Immunity

The Tenth Circuit has not delineated what actions constitute "adverse employment actions" in the First Amendment context." Baca v. Sklar, 398 F.3d at 1220. The lack of clarity on the present state of the law which has led the Court to decide that Ms. Emerick did not suffer an adverse action at the hands of the Defendants also leads to the conclusion that the law was unclear at the time these actions allegedly occurred. It should have been clear to Defendants that actions less severe than dismissal or termination could violate an employee's First Amendment rights (such as, in certain circumstances, transfer, non-renewal of contract, or alteration of duties). However, because even trivial actions are theoretically "less harsh than dismissal," the law must be "well developed enough to inform the reasonable official that his conduct violates that law." Patrick v. Miller, 953 F.2d 1240, 1249 (10th Cir. 1992) (quotation omitted). There may be a "constitutional rule already identified by the courts" which apply with

18

"obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" United States v. Lanier, 520 U.S. 259, 271, (1997) (quoting Anderson v. Creighton, 483 U.S. at 640); Schuler, 189 F.3d at 1310) (there must be some, but not identical, correspondence between the cases cited and the factual situation in the case at hand).

Accordingly, I find that there is no Supreme Court of Tenth Circuit decision on point, or clearly established weight of authority from other courts which would preclude qualified immunity for Defendants Nicholson and Besett for the following actions: (1) that Mr. Nicholson would be violating Ms. Emrick's constitutional rights by leaving a room during a meeting where she was present or where she was speaking; (2) that Ms. Besett or Mr. Nicholson would be violating Plaintiff's rights by privately criticizing her in a meeting with her immediate supervisor; (3) that assigning another supervisor to assist with the supervision of Ms. Emrick would violate Ms. Emrick's First Amendment rights; (4) or that adding another goal to accompany an evaluation that had the highest possible score would violate her constitutional rights. Moreover, the law at the time Ms. Emrick received her November 17, 2003 evaluation was not sufficiently clear to put Defendants on notice that issuing Ms. Emerick that evaluation would violate her First Amendment rights. The evaluation rated Ms. Emrick as unsatisfactory in only three out of fifteen categories, even after it was updated in May 2004. Ms. Emerick was required to meet with Ms. Frazier every two weeks, which Plaintiff herself admitted did not occur with such frequency. Under Lybrook, these required meetings are not enough to constitute detrimental actions. Plaintiff was not met with further consequences, even after the May update.

B.  Liability of School Board

The liability of the CCSD School Board was premised upon Plaintiff's showing of

wrongful conduct taken by Defendant Besett.  Based upon my determination that Ms. Besett has not taken any actions against Plaintiff which would violate Plaintiff's First Amendment rights, Plaintiff's claims against the School Board must fail.  See, Apodaca v. Rio Arriba County Sheriff's Dept., 905 F.2d 1445, 1447 (10th Cir. 1990) (municipality may not be held liable where there is no underlying constitutional violation by any of its officers (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

## CONCLUSION

Plaintiff's First Amendment claims against the remaining Defendants, Ms. Besett and Mr. Nicholson individually, and the School Board based on actions of Ms. Besett as final policymaker, shall be dismissed.  Plaintiff Emrick has failed to satisfy one of the required prongs of a First Amendment claim, i.e., that she suffered an adverse action.  Even assuming that the actions taken were sufficiently detrimental under the First Amendment, the individual Defendants are entitled to qualified immunity because the law was not clearly established at the relevant time that performing those actions would violate Plaintiff's First Amendment rights.

**THEREFORE,** Defendants' Motion for Summary Judgment as to Claims of Plaintiff Emrick **(Doc. 81)** is GRANTED, disposing of all of Ms. Emrick's claims in this action.[6]

**IT IS SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE

---

[6] Together with the Court's findings and conclusions in the Memorandum Opinion and Order of May 26, 2004 (Doc. 31), and the findings and conclusion in the instant Memorandum Opinion and Order, all of Ms. Emrick's claims against all Defendants have now been dismissed.