## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————

QUINTINA DESCHENIE,
GLORIA JEAN TODACHEENE, and
PATRICIA EMRICK,

      Plaintiffs,

v.                                                                              Civil No. 03-1226 WJ/DJS

BOARD OF EDUCATION OF CENTRAL
CONSOLIDATED SCHOOL DIST. NO. 22,
RANDY J. MANNING, individually and in his
capacity as School Board President,
GARY D. RAY, individually and in his
capacity as School Board Vice President,
STANLEY R. KING, individually and in his
capacity as School Board Secretary,
LINDA BESETT, individually and in her
capacity as Superintendent of Schools,
JAY MORTENSEN, individually and in his
capacity as Assistant Superintendent of Schools, and
DENNIS NICHOLSON, individually and in his
capacity as Assistant Superintendent of Schools,

      Defendants,

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT AS TO PLAINTIFF TODACHEENE

THIS MATTER comes before the Court upon a Motion by Defendants for Summary

Judgment as to Claims of Gloria Jean Todacheene, filed January 10, 2005 **(Doc. 83)**.  Plaintiffs

allege that Defendants retaliated against them for speaking out on matters of public concern, in

violation of their First Amendment rights.  Having considered all the pleadings, memoranda and

other materials submitted by the parties, as well as the applicable law, I find that Defendants'

motion is well-taken, and is granted.

**Background**

Plaintiffs in this case are present and former employees at Central Consolidated School District ("CCSD"), which is located largely within the Navajo Indian Reservation.  Plaintiffs allege that Defendants engaged in a policy and practice of discouraging or preventing speech which questions the use of funds designated for Navajo bilingual or special education, or which questions CCSD's compliance with program requirements or use of program funds.   The Court recently granted summary judgment to Defendants as to all of Plaintiff Emrick's claims. See, Doc. 109.  Defendants' summary judgment motion as to Plaintiff Deschenie's claims is still pending before the Court.  This motion seeks dismissal of Plaintiff Todacheene's First Amendment claim against Defendants.  Thus, this memorandum opinion and order addresses only those claims asserted against Defendants by Plaintiff Todacheene ("Todacheene").

## I.    Procedural History

In a previous Order on Defendants' Motion to Dismiss, the court narrowed some issues of liability on the part of the Board of Education ("Board" or "School Board") and Board members. Doc. 31 (Mem. Opin. & Order, 5/26/04, "May 26th Order").  Todacheene's claims against Defendants are asserted against: (1) Defendants Besett and Mortensen ("Besett" and "Mortensen") individually, (2) the Board members individually and officially; and (3) the School Board itself based on the actions of Besett as School Superintendent of CCSD and final policymaker for the Board.  See, Doc. 31 at 12 (emphasis added).  Mortensen is assistant Superintendent of CCSD.   The Board members are Defendants Randy Manning ("Manning"), Gary Ray ("Ray") and Stanley King ("King") as, respectively, the President, Vice President and Secretary of the School Board.

2

**B.     Factual History**

The Court sets out the facts according to what is undisputed by the parties, and where disputed, in a light most favorable to Todacheene as the non-moving party.  Reed v. McKune, 298 F.3d 946, 949 (10th Cir. 2002).  Todacheene is a certified teacher who began working for CCSD in 1978.  She served as principal of Mesa School in Shiprock from 1992 until 2003.  Todacheene was subsequently the assistant curriculum support administrator of CCSD until she retired at the end of the 2003-04 school year.

 Plaintiff alleges a sole instance of protected speech which drives this lawsuit, made at an administrator's retreat she attended on August 6-7, 2002.  At the retreat, Defendant Manning made statements about "killing the sacred cow, bilingual education K-3 [kindergarten through 3]," referring to Navajo bilingual education.  Manning also expressed a concern that bilingual education was a factor in students' low reading test scores.[1]  After the meeting, Todacheene approached Manning with several other women, including Ms. Deschenie.  Todacheene told Manning that she was "appalled" at his remark about "killing the sacred cow," that he had a "Navajo constituency and to make remarks like that was very imprudent."   Ex. to SMF 6 (Todacheene Depo. at 9:19-25; 10:1-8; 17:9-14).[2]  There is some dispute as to the exact content

---

[1]  In his deposition, Manning stated that at the retreat, he made it clear that he was not going to do away with the Navajo bilingual program, but stated that the program needed to be examined.  One suggestion was to immerse children who were English deficient for three years in English, between K-3, which was allowed under the Federal No Child Left Behind bilingual program.  Pltff's Ex.: Manning Depo. at 15.

[2]  The Court's reference to Defendants exhibits will follow the dual designation used by Defendants, some corresponding to statements of material facts ("SMF"), and others assigned exhibit numbers.

and manner of Todacheene's other comments.  Plaintiff claims she also stated that "[T]his is what causes the school district to split. . . ." Todacheene Depo. at 15-16:21-25, 1-7).  Defendants present an unidentified deposition in which the witness remembers Todacheene as "screaming at [Manning] . . . "We'll just split the district."  Ex. to SMF 7, attached to Reply.  While Defendants' description of Todacheene's manner is "inappropriate," Plaintiff describes her tone as being "forceful."  Manning described it as "more of an angry tone."  Manning Depo. at 16-17.

On September 12, 2002, Todacheene attended a meeting with Besett and Mortensen in which the incident at the administrator's retreat was discussed.  Todacheene did not receive a written reprimand as a result of this meeting.

On September 13, 2002, the State Department of Education placed the Mesa Elementary School on a corrective action plan.  This is a process whereby the State Department of Education intervenes when a school fails to meet the expectations in the state's accountability rating system. In the fall of 2002, Mortensen had a discussion with Todacheene regarding a possible transfer to an Assistant Principal position at another school.  Ultimately, Mortensen did not recommend the transfer and Todacheene continued as Principal at the Mesa school.

Todacheene requested leave to attend a conference scheduled on October 7 and 8, 2002. Mortensen denied the request because he felt Todacheene needed to be present at school due to the corrective action plan which had been placed on the school.  Besett was not involved in the denial of leave.   On October 30, 2002, Mortensen evaluated Todacheene as unsatisfactory on two categories out of fifteen categories.  Plaintiff was placed on a growth plan in connection with these evaluations.  On November 14, 2002, Mortensen e-mailed Todacheene and expressed his concern regarding the corrective action process.  In the e-mail, Mortensen told Plaintiff he

4

thought she was "simply going through the motions" of the corrective action process in trying to get the Mesa Elementary School up to state accountability standards.  Ex. to SMF 14.  Part of the message concerned what Mortensen felt was an inappropriate use of sick leave:

> . . . A large part of my obligation is to adhere to CCSC Board Policy and enforce policy. In essence, what you did today was to tell me that you will be inappropriately using sick leave in the future. . . In the meantime, please provide documentation of the medical appointments that you took on Tuesday and Wednesday.  Please know that I will also ask for medical documentation of future absences if it is necessary for me to do so.

Ex. to SMF 14 at 2.

In early December 2002 there was a series of e-mails between Mortensen and Todacheene addressing performance concerns and Todacheene's anticipated absence in December due to Plaintiff's mother's illness and recovery.  During that time, Manning planned to take over as acting principal.  The tone and text of the messages indicates that there was some sensitivity on Plaintiff's part regarding Manning's stepping into her position, albeit temporarily.  In an e-mail to Todacheene, Manning explained that the school needed to have a principal on location during the time Todacheene was gone, particularly given that the corrective action process was ongoing. Ex. 17 (Ex. to SMF 15).  Another apparently sensitive area was Manning's use of Todacheene's office while Manning was acting principal.  Todacheene saw no need for Manning to use her office ("There is no need for you to come in and use my office").  Manning wanted to have the space "used as an office where individuals can meet privately and confidentially with the principal."  Ex. 17 at 1-2.   In an e-mail dated December 2, 2002, Manning acknowledged that because the use of Todacheene's office was a sensitive one for her, he would not plan on using it until December 5th so that she would be free to remove anything that she did not want in the office during his use.  Ex. 17 at 2.

5

On December 9, 2002, Mortensen submitted a memo to Todacheene outlining "expectations for [Todacheene's] continued leadership at Mesa Elementary School." The memo addressed concerns which he had previously shared with Todacheene regarding performance expectations and institutional leadership." Ex. 16. The expectations which were listed included:

- Conduct weekly faculty meetings;
- Clean office and "regain its use as a place to welcome parents and meet privately as needed";
- Resume and continue weekly observations;
- Meet weekly with immediate supervisor;
- Provide documentation of leave as requested in previous e-mail;
- Use and approve leave appropriately "and in accordance with CCSC Board Policy and Corrective Action Plan";
- Conduct monthly parent activity night;
- Continue to submit all forms of employee leave.

There was another series of e-mails between Mortensen and Todacheene in January and February 2003, again addressing performance concerns. Manning addresses several topics in these memos, including his expectation for Todacheene's continued cleaning of her office (to which, according to the memo, Todacheene had not responded); limiting intercom announcements to the beginning and end of the day; and test preparation and test security. Exs. 18 & 19 (Ex. to SMF 17).

Mortensen recommended Todacheene be transferred to another position because of his interaction with her during the 2002-2003 school year and his belief that she would not do what was necessary to remove Mesa Elementary School from corrective action.[3] On February 20, 2003, Todacheene was notified she would be transferred to another administrative position for the 2003-2004 school year. On February 28, 2003, Todacheene received another evaluation from

---

[3] Todacheene does not dispute this statement of fact by Defendants.

Mortensen, in which she was rated again unsatisfactory in two categories out of fifteen.

Todacheene alleges that she suffered retaliation at the hands of Defendants because of her comments at the August 2002 administrator's retreat.  Defendants focus on the following alleged employment actions:

"       Reprimand on September 12, 2002 when Todacheene met with Besett and Mortensen;.

"       Denial of Todacheene's leave request for October 7 and 8, 2002;

"       Evaluations of October 30, 2002 and February 28, 2003 and growth plans;

"       Transfer from principal to administrative position (curriculum support administrator) for the 2003-2004 school year.

Todacheene does not respond to Defendants' arguments on the alleged adverse actions relating to the denials of leave, the evaluations and growth plans, the 2003 decision not to rehire her as principal, or her transfer to the position as curriculum support administrator for the school year 2003-2004.  Instead, the response brief lists only three allegedly adverse actions, only one of which (the September 2002 "reprimand") aligns with Defendants' discussion:

"       oral reprimand of Todacheene in on September 12, 2002;

"       assigning an Assistant Superintendent to monitor Todacheene in the fall of 2002;

"       threatening to transfer Todacheene from her position as school principal to assistant principal at a different school.

Defendants also note, correctly, that Todacheene did not identify either the evaluations or her transfer as adverse actions in her Answers to Interrogatories.  See, Mem. in Supp., n.1 & 3; Ex. to SMF 22.  Todacheene did, however, allege the transfer as retaliatory in her complaint at ¶ 57. The Court agrees that Todacheene has not alleged anywhere that either the October 30, 2002 or

February 28, 2003 evaluations were adverse actions.  However, Todacheene does allege in the complaint at ¶ 58 that "shortly after" Defendants became aware of the lawsuit, Todacheene received a "less than satisfactory evaluation" and was placed on a growth plan.  The Court's discussion will include the growth plans raised by Defendants as well as the one vaguely alleged by Todacheene in the complaint, since the same analysis would apply.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of material fact is "genuine" if a  reasonable jury could return a verdict for the nonmoving party.  Moya v. U.S.A. et al, 35 F.3d 501, 503 (10th Cir. 1994), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In applying this standard, the Court construes all inferences arising from the record in favor of the nonmovant.  Stinnett v. Safeway, Inc., 337 F.3d 1213, 1216 (10th Cir. 2003).  The nonmovant must establish, at a minimum, "an inference of the existence of each element essential to her case."  Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)).

Defendants do not assertively raise the defense of qualified immunity.  The defense is not set out in their briefs,[4] but is merely referenced in one sentence in the reply in which Defendants make a generic argument that the actions taken against Todachenie are not adverse under the First Amendment because the law was not clearly established at the time.  The Court will not make

---

[4] Defendants did at least set out the standard for qualified immunity in their briefs supporting the motions for summary judgment as to the claims of both Plaintiffs Emrick and Deschenie.  See, Doc. 82 at 3; Doc. 86 at 9.

arguments for parties which are not presented in the briefs, and will therefore limit its qualified immunity analysis to the issue of adverse actions.

Some special rules apply when a defendant's claim for summary judgment is based on qualified immunity.[5] <u>Gehl Group v. Koby</u>, 63 F.3d 1528, 1535 (10th Cir. 1995). Once the defense of qualified immunity is raised, the plaintiff bears the burden of establishing that the defendant has violated clearly established law. <u>Hovater v. Robinson</u>, 1 F.3d 1063, 1066 (10th Cir. 1993). To reach the question of whether a defendant official is entitled to qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at all. <u>Martinez v. Mafchit</u>, 35 F.3d 1486, 1490 (10th Cir. 1994). This requires the district court to first determine whether the plaintiff's allegations, if true, state a claim for a constitutional right that was clearly established at the time the defendant acted. <u>Bisbee v. Bey</u>, 39 f.3d 1096, 1100 (10th Cir. 1994). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

Once the plaintiff makes the required showing, the public official assumes the usual summary judgment movant's burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. <u>Hinton v. City of Elwood, Kan.</u>, 997 F.2d 774, 779 (10th Cir. 1993) (cited in <u>Howard v. Dickerson</u>, 34 F.3d 978 (10th Cir. 1994);

―――――――――――――

[5] The defense of qualified immunity is not available to entities, such as a school board, based on the good faith of its members. See, <u>Key v. Rutherford et al</u>, 645 F.2d 880, 883 (10th Cir.1981); <u>Seamons v. Snow</u>, 206 F.3d 1021, 1029 (10th Cir. 2000) (Qualified immunity is not available as a defense to municipal liability) (citing <u>Owen v. City of Independence</u>, 445 U.S. 622, 638 (1980)).

Fed.R.Civ.P. 56(c).  Specifically, the public official must show that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Discussion

To prevail on her claim of retaliation, Todacheene must prove that (1) her speech is protected under the First Amendment and (2) the speech was a substantial or motivating factor behind the adverse employment decision.  Conaway v. Smith, 853 F.2d 789, 795 (10th Cir.1988) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).   Once Todacheene meets that burden, Defendants may avoid liability by showing that they would have made the same decision in the absence of the protected activity.  Childers v. Independent Sch. Dist. No. 1 of Bryan County, Okla., 676 F.2d 1338, 1341 (10th Cir.1982).

Defendants argue that Todacheene has failed on all the above elements, namely: that she did not engage in protected speech, or that a balancing test for that speech would favor Defendants; that the alleged actions taken by Defendants were not adverse actions; and that Todacheene's speech was not a motivating factor behind any action taken by Defendants.

**I.     Whether Todacheene's Speech was Protected**

Defendants contend that Todacheene's speech at the administrator's retreat in August, 2002 does not qualify as protected speech under the First Amendment.  A two-part inquiry is used to determine whether a public employee's speech warrants constitutional protection:  (1) whether the speech relates to matters of public concern, Connick v. Myers, 461 U.S. 138, 146 (1983); and (2) whether the interests of the public employee in commenting on matters of public concern

10

outweigh the interest of the government employer "in promoting the efficiency of the public services it performs through its employees," Pickering v. Board of Education, 391 U.S. 563, 568 (1968).   If the employee's speech does not touch on a matter of public concern, the court need not engage in the Pickering balancing analysis.  Connick, 461 U.S. at 146.   The determination of whether a public employee's speech warrants constitutional protection is a question of law to be resolved by the court on a motion for summary judgment.  Lee v. Bd. of Cty. Commissioners of Arapahoe Cty, Colo et al., 18 F. Supp.2d 1143, 1157 (D.Col. 1998) (citation omitted).

A.    Whether speech involved public concern

To determine whether employee speech touches on a matter of public concern, we look at whether it can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick, 461 U.S. at 146.  When the content of the speech focuses on disclosing public officials' malfeasance or wrongdoing, it is likely to be considered a matter of public concern.  Wulf v. City of Wichita, 883 F.2d 842, 857 (10th Cir.1989) (citations omitted). Conversely, speech is generally not protected if the aim is simply to air grievances of a purely personal nature.  Id.   To determine if the speech related only to internal personnel matters and not to the discharge of governmental responsibilities, the Court must consider the "content, form, and context of a given statement, as revealed by the whole record."  Connick, 461 U.S. at 147-48. The Court should also look at the motive or subjective intent of the speaker "to learn if the speech was calculated to redress personal grievances or to address a broader public purpose." Patrick v. Miller, 953 F.2d 1240, 1248 (10th Cir.1992).  The pertinent inquiry is whether the actor is speaking as a citizen or an employee.  Connick, 461 U.S. at 147.

Todacheene's speech consists of her comments to Manning in response to Manning's

statement about "killing the sacred cow" and other statements which questioned the efficacy of the Navajo bilingual program. Todacheene stated that she was "appalled" at what Manning said, and that it was "imprudent" to make such remarks because Manning had a Navajo constituency. Todacheene argues that her comments involved the effectiveness of the schools and their ability to teach Native American language and culture to Native American students; literacy, test scores and other basic educational issues, all of which are matters of public concern.

The objectives, purposes, and mission of educational institutions are undoubtedly matters of public concern. Gardetto v. Mason, 100 F.3d 803, 813-14 (10th Cir. 1996) (in context of public university). However, Todacheene's lofty characterization of her comments are belied by her own assertions at her deposition, where the only statement she could positively attribute to Manning were his words "kill the sacred cow." Ex. to SMF 6 at 11-12. Todacheene's comments were directed solely at Manning and were made in the context of personal disagreement with his presentation and statements. Neither the content nor context of the speech indicated any concern regarding the need for continuing the Navajo bilingual program, or for any malfeasance or wrongdoing by school officials. Rather, Todacheene verbally attacked Manning for merely making statements which she thought were "imprudent" (statements which, it could easily be argued, was an exercise of Manning's own right to free speech).

Todacheene insists that the basis for her speech was her commitment to the relationship between teaching the Navajo language and student performance. As evidence of her subjective intent for her comments made to Manning, Todacheene refers to her explanation to Besett at the September 12th meeting shortly after the retreat incident:

. . . I told her "Dr. Besett, you don't know the history of this district and the people of the

valley.". . . I said "The Navajos, we have always had to fight for our language, for our jobs, for our people, for our kids . . . ."

Todacheene Depo. at 56.   This is a close call.   The Court is inclined to rule that Todacheene's speech was not a matter of public concern, based on the above discussion.   Todacheene's hindsight explanation to Besett, an individual who was not even present when Todacheene spoke to Manning, is a weak support for Plaintiff's contention that her speech is protected.   However, because the explanation presents a somewhat anemic inference that Plaintiff was motivated to speak as a citizen and not merely an employee, the Court will impute to Plaintiff's speech a concern about the continuation of the Navajo bilingual program and the impact of that program on students.   Accordingly, I conclude that Plaintiff's comments to Manning touched on matters of public concern.

Defendants make a distinction that Todacheene's speech was made privately in a school setting, rather than in a public forum.   This distinction holds no weight.   First Amendment protection applies even when a public employee communicates privately with his employer instead of expressing his views publicly.   Givhan v. Western Line Consolidated Sch. Dist., 439 U.S. 410, 413 (1979) (noting that the weight of case law demonstrates that the choice to speak through a private forum, rather than a public one, does not remove the speech from First Amendment protection; Conaway, 853 F.2d at 797 (employee's complaints made privately to City Administrator still held to be a matter of public concern).

B.   Balancing inquiry

The next step in determining whether Plaintiff's speech is protected under the First Amendment proceeds under a balancing inquiry.   The problem in this case, as it was in Pickering,

13

is to "arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  391 U.S. 563 at 568.  <u>Pickering</u> directs a court to consider a number of factors in balancing the competing interests at stake, such as the manner, time and place of the employee's expression as well as the context in which the dispute arose.  <u>Connick</u>, 461 U.S. at 152-53.  Other pertinent considerations include "whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."  <u>Rankin v. McPherson</u>, 483 U.S. 378, 388 (1987).

Defendants argue that Todacheene's personal confrontation of Manning weighs toward the school's side of the scale, but fail to identify any detrimental effect Plaintiff's speech had on either on the school's efficiency or in the harmony between coworkers.  Defendants' generic argument is not enough to tip the scale.  <u>See</u>, <u>Prager v. LaFaver</u>, 180 F.3d 1185, 1191 (10th Cir. 1999) (quoting <u>Rankin</u>, 483 U.S. at 388) (the employer cannot satisfy its burden with speculative assertions of workplace disruption); <u>Jantzen v. Hawkins</u>, 188 F.3d 1247, 1257 (10th Cir. 1999) (specific evidence of actual disruption is necessary); Wulf, 883 F.2d at 861-62 (purely speculative allegations of disruption are insufficient).   While Todacheene could have used professional restraint in the way she approached Manning, there is no evidence that her comments to Manning were responsible for creating any disruption or disharmony within the school.

Defendants have not shown that their interest in promoting the efficiency of public services outweighs Plaintiff's right to speak.  Thus, I conclude that Todacheene's speech to

14

Manning at the administrator's retreat in August 2002 is protected by the First Amendment.

## II.   Adverse Action Under the First Amendment

Having determined that Todacheene engaged in protected speech, the next step is to determine whether Todacheene suffered an adverse employment action as a result of her engaging in protected speech.  The Tenth Circuit liberally defines the phrase "adverse employment action," Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998) and takes a case-by-case approach in determining whether a given employment action is adverse.  Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998).  The Tenth Circuit has held that "deprivations less harsh than dismissal" can violate a public employee's rights under the First Amendment. Schuler v. City of Boulder et al, 189 F.3d 1304, 1309 (10th Cir. 1999).  However, the Tenth Circuit has never ruled that "all such acts, no matter how trivial, are sufficient to support a retaliation claim."  Lybrook v. The Members of the Farmington Municipal Schools Board of Education, 232 F.3d 1334, 1340 (10th Cir. 2000).  In other words, Schuler left open the possibility that "there may be some minor adverse actions that would not constitute First Amendment violations."  Id., 232 F.3d at 1340.

A      Whether Defendants Took Adverse Action against Todacheene

The Court's analysis of the employment actions taken against Todacheene begins with those taken up by Defendants:

"        Reprimand on September 12, 2002 when Todacheene met with Besett and Mortensen;

"        Denial of Todacheene's leave request for October 7 and 8, 2002;

"        Evaluations of October 30, 2002 and February 28, 2003 and growth plans;

"        Transfer from principal to administrative position (curriculum support administrator) for the 2003-2004 school year.

These are followed by a discussion regarding those raised by Todacheene in her response brief:

"        oral reprimand of Todacheene on September 12, 2002;
"        monitoring by Assistant Superintendent in the fall of 2002;

"        threatening to transfer Todacheene from her position as school principal to assistant principal at a different school.

In addition, there is a veritable litany of other "acts or omissions" listed by Todacheene as retaliatory acts in her Answers to Interrogatories 8, 9 and 10. Ex. to SMF 22. These "acts or omissions" include (1) being banned from the main administration building in the 2003-2004 school year; (2) other denials of leave by Besett; (3) being told that she didn't need to attend chapter meetings; and (4) being placed on a growth plan as a result of a "less than satisfactory evaluation" given to Todacheene shortly after this lawsuit was filed. Todacheene does not mention these at all in the response brief. However, these incidents fall loosely into categories of the adverse actions discussed by Defendants, although Defendants do not address them separately. For that reason, the Court will therefore address them as well.

*(1)*     *Reprimand*

Todacheene concedes that she was given no written reprimand on August 12, 2002 when she was called into Besett's office and the incident at the administrator's retreat was discussed with Besett and Mortensen. Nevertheless, Todacheene argues that Besett's oral reprimand is an adverse action.[6] Todacheene's description of the incident is that Besett, who did the talking at the

---

[6] According to Defendants, Mortensen had prepared written reprimand, but Besett instructed him to "let the matter go and not give [Todacheene] the letter of reprimand." Ex. to SMF 10, Mortensen Depo. at 21.

meeting, told Todacheene that she was "appalled at the three of you ladies attacking Mr.

Manning" and that she had called Todacheene into her office to "put closure" to the incident.

Todacheene replied, "I don't understand why you want closure . . . ."  Ex. to SMF 10,

Todacheene Depo at 56.   Mortensen's recollection is that the purpose of the meeting was to

discuss working in a "professional manner with others" with whom you have disagreements.  Ex.

to SMF 10, Mortensen Depo at 20-21.  Mortensen also remembered Todacheene as being in a

defensive posture at the meeting, and that ultimately Todacheene" stormed out of the office."

Mortensen Depo. at 21:25.  Accepting all the facts of this incident favorably to Todacheene, there

is no adverse action in the verbal reprimand she received from Besett.  In <u>Hardeman v. City of</u>

<u>Albuquerque, et al.</u>, 377 F.3d 1106 (10th Cir. 2004), the Tenth Circuit held that public criticism

of a government employee was not an adverse action.  <u>Id</u>. at 1118-19 ("We have never found a

First Amendment violation on the basis of disparaging comments alone").  Besett made her

statement to Todacheene behind closed doors.  Even if Todacheene was insulted by Besett's

remarks and reprimand, the event cannot be considered an adverse employment action under the

First Amendment.   <u>See</u> <u>also</u> <u>Lee v. N.M. Bd. of Regents</u>, 102 F. Supp.2d 1265, 1275 (D.N.M.

2000) (verbal admonishment is not adverse employment action) (citation omitted); <u>Phelan v.</u>

<u>Laramie County Community College Bd. of Trustees</u>, 235 F.3d 1243, 1245 (10th Cir. 2000)

(finding that Board's censure regarding plaintiff's placement of an advertisement in local paper

encouraging the public to vote against the measure did not infringe any of plaintiff's free speech

rights because it did not punish her for exercising these rights, nor would it deter her future

speech).

*(2)     Denial of leave*

Mortensen denied Todacheene's leave request to attend a conference scheduled on October 7 and 8, 2002. It is undisputed that Besett was not involved in the denial of leave. Mortensen initially approved the request ("I initially approved it as I was quickly signing some documents"), but then later changed his mind. Ex. 13 (Ex. to SMF 12). Mortensen felt that he could not justify Todacheene's absence from the school while the school was in corrective action, and that her presence at the school was necessary (Todacheene was principal of Mesa Elementary school at the time). This is a mere inconvenience, not an adverse action. Todacheene did not get to attend a conference, and lost no leave time or other benefits from the denial of her leave request. The Court finds nothing adverse in denying Todacheene leave to attend a conference less than a month after the school had been placed on a corrective action plan, which Todacheene does not dispute. See, e.g., Griffin v. Potter, 356 F.3d 824, 829 (7th Cir.2004) (refusal to approve annual leave requests when work was backlogged does not constitute adverse employment action); Campbell v. Henderson, 2002 WL 1732361, unpubl. op. at *8 (N.D.Ill. July 26, 2002) (three denials of annual leave do not constitute adverse employment action) (citation omitted); Allen v. Potter, 2004 WL 2203600 (7th Cir. 2004) (alleged denials of annual leave experienced by postal worker were mere inconveniences, rather than adverse employment action).

*(3)     Evaluations and growth plans*

Defendants contend that the evaluations Todacheene received on October 30, 2002 and February 20, 2003 are not adverse employment actions under the First Amendment. The standard evaluation form lists fifteen skill categories, with a possible score of "1" or "2" for each category, "1" being Unsatisfactory, and "2" being Satisfactory. A rating of "1" requires that a Growth Plan be developed. A rating of "2" requires that a Refinement Plan be developed. The form would

seem to require a Growth Plan regardless of whether the employee received a single rating of "1"

or whether the employee received ratings of "1" in all 15 categories.  Ex. to SMF 13.[7]

On the October 2002 evaluation, Mortensen rated Todacheene as "1" or unsatisfactory in

two categories:  "Supervises staff development and performance evaluation to improve the

educational program," and "Demonstrates adherence to established timelines and procedures."

On the February 2003 evaluation, Todacheene again received a "1" rating in the category

"Demonstrates adherence to established timelines and procedures" and evidently performed

satisfactory in the other category on supervising staff development and performance evaluations.

However, Mortensen rated a "2" or satisfactory in a second category in the February 2003

evaluation, "Demonstrates a willingness to implement change, as appropriate."  Todacheene

admits that she and Mortensen had a difference of opinion with regard to the degree of staff

monitoring and supervision that was necessary.  Todacheene felt that constant monitoring of

employees was unnecessary and was opposed to Mortensen's plan for classroom supervising and

monitoring which he felt was required for the corrective action process.  Exs. to SMF 14 & 18 &

Todacheene Depo. at 62.

I find that these evaluations do not rise to the level of adverse actions, even under the First

Amendment.  Todacheene received an unsatisfactory rating in only two out of fifteen categories.

See, Lee v. N.M. Bd. of Regents, 102 F.Supp.2d 1265, 1275 (D.N.M. 2000); Fortner v. State of

_____

[7]  The exhibit that corresponds to SMF 13 is was misplaced where the exhibits
corresponding to SMF 14 should have been inserted.
The Court's Memorandum Opinion and Order granting summary judgment to Defendants
on Plaintiff Emrick's claims addressed very similar evaluations, except that Plaintiff Emrick
received an unsatisfactory, or "1" rating on three out of fifteen categories, instead of only two.
See Court's Docket for this case, Doc. 109 at 9.

Kansas, 934 F.Supp. 1252 (D.Kan.1996), aff'd 122 F.3d 40 (10th Cir.1997). The evaluations had absolutely no effect on her employment benefits or job duties; Todacheene does not dispute that she received a $3,000 raise for the following school year.[8] The Court's finding on this issue may be unnecessary, since it appears that Todacheene has not presented these evaluations as alleged retaliatory acts.   Todacheene does not mention either the October 30, 2002 or the February 20, 2003 evaluation in the Amended Complaint or in her Answers to Interrogatories requesting a list of alleged retaliatory acts.  Also, Todacheene apparently concedes that the results of these evaluations and the growth plans are not adverse actions, since she does not address any of these in the response brief.

In the amended complaint, however, Todacheene refers to an "unsatisfactory" evaluation and growth plan which she received "shortly after Defendants became aware of this lawsuit. . . ." Amended Complaint ¶ 58.  Todacheene does not include this event in her list of alleged retaliatory acts in her Answers to Interrogatories, or in the response brief where such a discussion would have been expected.  At any rate, it is clear that any act occurring after the October 2003 filing of this lawsuit happened well after the Todacheene engaged in her alleged protected speech.  Thus, even if this evaluation were sufficiently negative to constitute an adverse action, it is too remote in time from the protected activity to infer a retaliatory motive.  See, Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999) (three month period too long to show temporal proximity to establish causation).

*(4)    Mortensen's monitoring of Todacheene*

---

[8]  Tenth Circuit case law does not support a finding that the evaluations in themselves qualify as adverse employment actions under the First Amendment.  See, Court's discussion on same issue regarding Plaintiff Emrick's claims.  Doc. 109 at 12-16.

Todacheene alleges that Mortensen monitored her "constantly" during the 2002-2003 school year, and that she could not make any decision without first consulting him.  Ex. to SMF 22 (Ans. to Interrog. No. 8).   Todacheene stated in her deposition that Mortensen "took over" her leadership position, causing her staff to "wonder who is really in charge . . . ."  Todacheene states that she would "go through the motions" of making decisions, but would have to get all such decisions approved by Mortensen.  Pltff's Ex., Todacheene Depo. at 20.  Todacheene stated, for example, that Mortensen took over planning the meeting agendas.

Actions complained of in First Amendment claims must be "sufficiently substantial to present an actual or potential danger that an employee's speech will be chilled."  Keirsey v. Diamond,145 F.3d 1345 (10th Cir. 1998).   However, the fact that an assistant superintendent plans meeting agendas and is the final approval for actions taken at the school, particularly during the time a school is placed on a corrective action plan, is not evidence that Todacheene's authority was actually being undermined by Mortensen.  Todacheene was still making supervisory decisions, and there is no evidence that Mortensen's final approval took away any of Todacheene's supervisory duties.   Cmp, Baca v. Sklar, 398 F.3d 1210, 1220 (10th Cir. 2005) (finding adverse action where defendant removed plaintiff's supervisory duties over employee, deprived plaintiff of opportunity to supervise an employee plaintiff had recruited and encouraged other employees to bypass plaintiff and receive **direct** supervision from defendant, thereby undermining Baca's supervisory duties) (emphasis added).   Even assuming that Todacheene was closely monitored by Mortensen during the time she alleges, I find that Todacheene fails to offer any factual or legal basis for the contention that Mortensen's conduct rises to the level of a retaliatory act.

21

(5)     *Threat of transfer*

Todacheene alleges that Defendants, through Mortensen's conduct, threatened to transfer her in retaliation for her comments to Defendant Manning.  It is undisputed that on or about August 12, 2002, Mortensen had a discussion with Todacheene regarding her possible transfer to an Assistant Principal position at another school.  Mortensen told Todacheene that Besett had the idea of moving Todacheene to an assistant principal position at another school.[9]  Todacheene protested the idea, given the fact that the school year was about to begin and parents and staff were expecting her to be back in her position at principal for the coming year.

It is also undisputed that the transfer never took place.  Unrealized threats of discharge or other adverse action can rise to the level of adverse employment action when the threat comes from someone in position with significant influence over decisions to discharge or take adverse employment action.  Jeffries v. State of Kansas, 147 F.3d  1220, 1232 (10th Cir. 1998).[10]  However, even by Todacheene's recounting of the event, Mortensen's idea to transfer

---

[9]  Mortensen initially told Todacheene that the idea of transfer was the Board's idea, but then told her it was Besett's suggestion.  Todacheene Depo. at 52.

[10]  The plaintiff in Jeffries alleged retaliation under Title VII against a state hospital based on actions of her direct supervisor who threatened that he would not renew her clinical contract and allegedly refused to continue to supervise her.  In that case, the Tenth Circuit acknowledged prior decisions which held that "unrealized threats or tense personal relationships do not rise to the level of actionable retaliation"(citing Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1381 (10th Cir.1994)), but recognized a distinction between those cases and the case at bar.  The defendant in Jeffries had considerable influence over plaintiff's employment and work assignments.  The Tenth Circuit declined to decide whether threats can constitute adverse employment action "in and of themselves."  43 F.3d at 1382.  Instead, the Court found that plaintiff's retaliation claim survived summary judgment based on plaintiff's allegations that she was deprived of the educational benefit of being supervised by the defendant, a benefit she had contracted to receive.  In the instant case, the Court need not grapple with the question of whether threats constitute adverse employment action in a First Amendment context, given that the undisputed facts do not show that any "threat" was made.

Todacheene was hardly a "threat." Mortensen sounded out the idea to Todacheene, and she opposed the idea. Todacheene found out after three days that she would not be transferred. Todacheene Depo. at 53. Because a reasonable juror could not infer a "threat" of transfer from the discussion between Mortensen and Todacheene regarding a possible transfer, I do not find that this event is significant enough to be an adverse action, even by First Amendment standards.

(6)     *Transfer*

Sometime in the spring of 2003, at least six months following the time Todacheene made her comments to Manning at the administrators' retreat, Todacheene was notified she would not be rehired as principal and would be transferred to another administrative position (curriculum support administrator). Not rehiring Todacheene as principal and involuntarily transferring her to another position could constitute an adverse action, even though Todacheene received the advantage of a new raise in the new position. See, e.g. Worrell v. Henry, 219 F.3d 1197, 1213 (10th Cir. 2000) (decisions relating to promotion, transfer, and hiring constitute sufficiently adverse actions to trigger First Amendment protections, even where plaintiff who was transferred subsequently enjoyed new job). Lybrook, 232 F.3d at 1337.

(7)     *Additional denials of leave*

In her Answer to Interrogatory No. 10 (attached as exhibit to Defendants' SMF 22), Todacheene asserts that Marlene Frazier, Todacheene's immediate supervisor, denied leave requests for professional development during the school year 2003-2004, and that the denials were approved by Besett. The Court finds no reason why Besett's denial of professional development leave should be treated or considered differently from the leave request denied by

Mortensen, discussed above, which the Court has already found not to constitute an adverse action.

(8)     *Todacheene "banned" from administration building*

In her Answer to Interrogatory No. 10 (also attached as exhibit to Defendants' SMF 22), Todacheene alleges that during the 2003-2004 school year, she was 'banned" from the main administration building and told not to visit any school.  She was further told that these were "mandates" from Besett.  Todacheene has not included this either in the complaint or in her list of alleged adverse actions in the Pretrial Order (page 8).  Because Todacheene has not developed this allegation past a conclusory statement, the Court considers this item abandoned and waived by Todacheene as a separately alleged adverse employment action.  Also included in this category is the allegation that Mortensen told Todacheene that she did not have to attend chapter meetings "informing the community on Corrective Action schools" (from exhibit to Defendants' SMF 22, Ans. to Interrog. No. 10).

In sum, drawing all reasonable inferences in the light most favorable to Todacheene, I find that Todacheene has not sufficiently alleged that she was subjected to adverse or detrimental employment actions for purposes of her First Amendment claim, with the sole exception of her transfer in 2003 from principal of Mesa Elementary School to curriculum support administrator. The Court's conclusion is based on a consideration of Defendants' alleged conduct as a whole, and not merely as separate actions.  A collection of non-adverse actions (save one) do not add up to adverse conduct based on sheer number.

B.      Qualified Immunity on Issue of Adverse Action

Defendants summarily contend that even if the actions identified by Todacheene are

24

adverse and can be considered First Amendment violations, the law was not "clear or obvious" at the time, and thus, the individual Defendants are entitled to qualified immunity.  When considering the merits of a qualified immunity defense, the Court is first required to decide whether the plaintiff has alleged a viable constitutional claim.  Siegert v. Gilley, 500 US 226, 231 (1991). Taking Ms. Todacheene's allegations of retaliation as true, the Amended Complaint asserts the violation of a constitutional right.  Todacheene alleges that she engaged in protected speech when she addressed Defendant Manning at the administrators' retreat, and that as a result, Defendants took adverse employment action against her.

To overcome qualified immunity, a plaintiff must demonstrate that the right in question was clearly established at the time of defendant's conduct.  A right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir.1998) (quoting Anderson, 483 U.S. at 640).  A plaintiff must show "the particular actions taken by the defendants were impermissible under the law established at that time." Brammer-Hoelter v. Twin Peaks Charter Academy, 81 F.Supp.2d 1090, 1100 (D.Colo., 2000) (citations omitted).  This does not meant that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.  Rather, in the light of pre-existing law the unlawfulness must be apparent. Lybrook, 232 F.3d at 1340.

I have already determined that the oral reprimand given to Todacheene on August 12, 2002, the denials of leave and Mortensen's close monitoring of Todacheene during the 2002-2003 school year, were not adverse actions.  However, if this conduct had violated Todacheene's First Amendment rights, the law was not clearly established at the time that they would violate her

25

rights.  I have also concluded that the evaluations Todacheene received on October 30, 2002 and February 20, 2003 are not adverse, considering the extremely minor degree of deficiencies found in the evaluations.  Similarly, if these evaluations are sufficiently adverse to give rise to a First Amendment violation, it was not clear at the time that such conduct would violate Todacheene's constitutional rights.  Also, assuming that the alleged "threat" to transfer Todacheene in August of 2002 was indeed a threat, it was not clearly established at the time that such conduct would rise to the level of an adverse employment action.  Thus, the individual Defendants would be entitled to qualified immunity for the above conduct even if the above conduct were alternatively found to be adverse.

On the other hand, since at least 1999, the law was clear that employment actions less harsh than dismissal can violate an individual's First Amendment rights.  Schuler, 189 F.3d 1304. In order for the law to be "clearly established," there needs to be some, but not identical, correspondence between the cases cited and factual situation in the case at hand.  Schuler, 189 F.3d at 1310.  The actions taken by Defendants in this case concerning Todacheene's transfer have been sufficiently established in prior case law as adverse employment actions under the First Amendment.  Therefore, Defendants are not entitled to qualified immunity regarding the clarity of the law on the adverse action concerning Todacheene's transfer from principal of Mesa Elementary School to curriculum support administrator.

## III.   Whether Todacheene's Speech was Substantial or Motivating Factor in Action Taken

In order to preclude summary judgment on her First Amendment claim, Todacheene must finally show a dispute of material fact as to whether her speech was a substantial or motivating

factor behind the adverse employment decision.  Conaway v. Smith, 853 F.2d at 795.  Thus,

Todacheene must present evidence to show that there is some connection between her comments

to Manning in early August 2002, and her transfer in the spring of 2003.  See, Hicks v. City of

Watonga, 942 F.2d 737, 749 (10th Cir.1991) (to survive a summary judgment motion, a plaintiff

must point to specific evidence showing the official's actions were improperly motivated (citing

Lewis v. City of Ft. Collins, 903 F.2d 752, 755 (10th Cir.1990)).

     Defendants offer legitimate reasons for Todacheene's transfer and monitoring: that

Todacheene refused to do what was necessary to have Mesa School meet standards and to move

away from the corrective action plan.  There is also evidence that Todacheene's relationship with

Mortensen had deteriorated.  Mortensen stated that "[f]rom the very beginning, [Todacheene]

communicated to me that she did not believe. . . in corrective action.  She wanted the

administration and the state to go away."  Ex. to SMF 13, Mortensen Depo. at 64.  Mortensen

also recalled that in the fall of 2002, Todacheene told him she wished that he had "been struck by

a truck and killed."  Mortensen Depo. at 64:24-25.

     Todacheene's claim fails here, at the last prong in the First Amendment inquiry, for two

reasons.  First, Todacheene has apparently chosen not to address the issue of whether her transfer

was an adverse action, even though Defendants have focused on the transfer in their pleadings.

Moreover, the Court cannot make the argument for Todacheene.  See, Perry v. Woodward, 199

F.3d 1126, 1141 n. 13 (10th Cir.1999) (observing that court will not craft argument for party).  I

find that Todacheene has thus waived this issue and cannot rely on this particular conduct by

Defendants as a basis for her First Amendment claim.

     A further basis for the failure of Todacheene's claim based on her transfer is the long time

lag which attenuates any would-be connection between her protected speech and the adverse employment.  Close temporal proximity between the employee's complaint and the adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for retaliation.  Pastran v. K-Mart Corp., 210 F.3d 1201,1206 (10th Cir. 2000).  However, even in close proximity cases, temporal proximity alone is not enough to establish causation.  Conner, 121 F.3d at 1395 (four month time lag between plaintiff's participation in protected activity and termination by itself found not to be sufficient to justify an inference of causation).  Because Todacheene's transfer for the 2003-2004 school year happened at least six months after she made her statements to Manning at the administrative retreat, the transfer is too far out in time from which to infer a retaliatory motive.  See, Meiners v. University of Kansas, 359 F.3d 1222, 1231 (10th Cir. 2004) (six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient).  Todacheene does not offer any evidence which would overcome the time gap, that is, no evidence from which it could reasonably be inferred that her transfer was motivated by her speech to Manning instead of the reasons presented by Defendants. Therefore, Todacheene has not presented evidence on her First Amendment claim to withstand summary judgment.

## IV.    Board Liability and Official Capacity Suits

Defendants request that all official capacity claims be dismissed. A municipality cannot be held liable for the actions of its employees under the theory of respondeat superior.   Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000) (citation omitted).  Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with

respect to the challenged action.  Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-83

(1986) (plurality opinion)).   The Board could be liable to Todacheene based on actions taken by

Besett as final policy maker for the Board.  Besett's actions would also act bind the Board

members, Manning, Ray and King, in their official capacities.  See, Kentucky v. Graham, 473 U.S.

159, 166 (1985); Griess v. Colo., 841 F.2d 1042, 1045 (10th Cir. 1988) (an official capacity suit

is treated as a suit against the entity).   I have concluded that Todacheene's First Amendment

claim does not survive summary judgment because she has failed to present evidence to suggest

that her speech was a substantial or motivating factor behind the adverse employment decision.

This determination necessitates dismissal of Todacheene's claims against the Board and the

individual Defendants in their official capacities.  See, Apodaca v. Rio Arriba County Sheriff's

Dept., 905 F.2d 1445, 1447 (10th Cir. 1990) (A municipality may not be held liable where there is

no underlying constitutional violation by any of its officers).   Accordingly, Todacheene's claims

against the School Board and the individual Defendants in their official capacities shall be

dismissed.

**V.     Individual Capacity Claims against Board Members**

        The Court's findings regarding Todacheene's failure to show a connection between her

protected speech and her transfer eliminate any liability on the part of the other individual

Defendants.  Therefore, Todacheene's claims against all Defendants in their individual capacities

are dismissed.

**Conclusion**

        Todacheene engaged in speech protected by the First Amendment with the comments she

made to Manning at the administrator's retreat in August 2002, although the speech barely makes

29

the threshold of public concern.  The only employment action taken which could be considered adverse for purposes of First Amendment is Todacheene's transfer to an assistant principal position for the 2003-2004 school year.  Those actions which the Court has found not to be adverse, if they are adverse, were not clearly established as such at the time they occurred.  The Court finds that Todacheene has waived the issue, and therefore her reliance, on her transfer in 2003-2004 as a basis for her First Amendment claim.  The Court further finds that Todacheene has not presented material factual issues on whether her speech was a substantial or motivating factor behind her transfer. Todacheene's failure to meet her burden at summary judgment on this last prong in a First Amendment inquiry requires dismissal against the School Board, and the individual Defendants in both their individual and official capacities.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion  for Summary Judgment as to Claims of Gloria Jean Todacheene **(Doc. 83)** is hereby GRANTED for the above stated reasons.

_____
UNITED STATES DISTRICT JUDGE