**United States Court of Appeals for the Tenth Circuit**
.OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303)844-3157

Elisabeth A. Shumaker
Clerk of Court

Douglas E. Cressler
Chief Deputy Clerk

February 13, 2007

Mr. Matthew J. Dykman, Clerk
United States District Court for the District of New Mexico
333 Lomas NW, Suite 270
Albuquerque, NM 87102-2242

Re:      05-2270, Deschenie v. Bd. of Educ. No. 22
         Dist/Ag docket:  CIV-03-1226 WJ/DJS

Dear Clerk:

    Enclosed are a certified copy of the judgment and a copy of
the opinion filed in this case which are issued as the mandate of
this court.  See Fed. R. App. P. 41(a).  Please file it in records of
your court or agency.

    Please contact this office if you have questions.

                              Sincerely,

                              Elisabeth A. Shumaker
                              Clerk, Court of Appeals

                          By: _____
                              Deputy Clerk

clk:sts

cc:
    Earl R. Mettler
    Kevin M. Brown
    Daniel J. Macke

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

QUINTINA DESCHENIE,

    Plaintiff - Appellant,

    v.

BOARD OF EDUCATION OF
CENTRAL CONSOLIDATED SCHOOL
DISTRICT NO. 22; RANDY J.
MANNING, individually and in his
capacity as School Board President;
GARY D. RAY, individually and in his
capacity as School Board Vice President;
STANLEY R. KING, individually and in
his official capacity as School Board
Secretary; LINDA BESETT, individually
and in her capacity as Superintendent of
Schools; JAY MORTENSEN,
individually and in his capacity as
Assistant Superintendent of Schools; and
DENNIS NICHOLSON, individually and
in his capacity as Assistant Superintendent
of Schools,

    Defendants - Appellees.

No. 05-2270
(D.C. No. CIV-03-1226 WJ/DJS)

A true copy
Teste
Elisabeth A. Shumaker
Clerk, U.S. Court of
Appeals, Tenth Circuit
By
Deputy Clerk

---

## JUDGMENT

Filed January 22, 2007

---

Before **MURPHY, BRORBY**, and **TYMKOVICH**, Circuit Judges.

---

This case originated in the District of New Mexico and was argued by counsel.

The judgment of that court is affirmed.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk

by:
Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**January 22, 2007**

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

QUINTINA DESCHENIE,

      Plaintiff - Appellant,

    v.

BOARD OF EDUCATION OF CENTRAL
CONSOLIDATED SCHOOL DISTRICT NO. 22;
RANDY J. MANNING, individually and in his
capacity as School Board President; GARY D.
RAY, individually and in his capacity as School
Board Vice President; STANLEY R. KING,
individually and in his official capacity as
School Board Secretary; LINDA BESETT,
individually and in her capacity as
Superintendent of Schools; JAY MORTENSEN,
individually and in his capacity as Assistant
Superintendent of Schools; and DENNIS
NICHOLSON, individually and in his capacity as
Assistant Superintendent of Schools,

      Defendants - Appellees.

No. 05-2270

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CIV-03-1226)**

---

Earl Mettler, Mettler & Lecuyer, P.C., Albuquerque, New Mexico, for Plaintiff-
Appellant.

Daniel J. Macke (Kevin M. Brown with him on the brief), Brown & German,
Albuquerque, New Mexico, for Defendants-Appellees.

Before **MURPHY**, **BRORBY**, and **TYMKOVICH**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. Introduction

Quintina Deschenie, a former employee of Central Consolidated School District ("CCSD"), sued the CCSD Board of Education and individual members of the Board and district administration (collectively, the "Board" or "School Board") pursuant to 42 U.S.C. § 1983. In her complaint, she alleged the defendants took adverse employment actions against her in retaliation for engaging in speech protected by the First Amendment. The United States District Court for the District of New Mexico granted summary judgment to the defendants. It concluded certain instances of Deschenie's speech were unprotected, and those which were protected were not causally related to the adverse employment actions taken by the School Board. Deschenie appeals the district court's order granting summary judgment to the defendants. This court has jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** the district court's grant of summary judgment.

## II. Background

Deschenie was the Director of Indian Education and Bilingual Education for CCSD from August 2000 through June 2003. From June 2003 through November 2003, she was the Bilingual Education Coordinator. CCSD is a school district located mostly within the Navajo Indian Reservation in San Juan County, New Mexico, and 6500 of its 7000 students are Navajo. The curriculum of CCSD includes a bilingual education program funded by the state.

On August 7, 2002, Randy Manning, the president of the School Board, spoke at a CCSD administrator's retreat. During this speech, Manning referred to the bilingual education program as a "sacred cow" which needed to be looked at critically, and he discussed the possibility of changes to the program for children in kindergarten through third grade. Deschenie was present at this meeting and interpreted these statements as indicating an intent to eliminate the bilingual education program. Following the meeting, she and two other CCSD employees spoke to Manning and expressed disagreement with his proposals.

Subsequently, on August 16, 2002, Deschenie wrote a letter to Manning which she sent by email.[1] In this letter, she expressed concerns with the current state of the bilingual education program and gave suggestions on how to improve

---

[1] In their motion for summary judgment, the defendants contend neither Manning nor Superintendent Linda Besett received this letter. Because Deschenie produced this letter in her response to the motion, however, there is evidence to the contrary. Viewing all evidence in the light most favorable to Deschenie, this court assumes the letter was delivered for purposes of this review.

the alleged deficiencies. Among other things, her concerns included the lack of access to the programs for many students, the inadequate number of staff, the inadequate salaries for staff, and the high level of staff turnover. She also informed Manning that, as a whole, CCSD was not complying with the state bilingual program requirements of forty-five minutes of daily home-language instruction.

On October 7, 2002, Deschenie attended an Indian Education Committee meeting in her capacity as a school administrator. At this meeting, Manning spoke in an effort to clarify his position on bilingual education. He explained that although he had concerns with the bilingual education program, he did not intend to eliminate the program. Deschenie also spoke at this meeting and repeated her concerns that the program was not complying with state standards and was not adequately supported within CCSD.

Following the October 7 meeting, the issue began attracting publicity and public controversy. Deschenie wrote a guest column for the local newspaper on December 15, 2002, in which she again expressed the importance of the bilingual education program and the need for increased support from the administration and the community. This guest column identified Deschenie as the Director of Bilingual and Indian Education for CCSD and was approved in advance by the Superintendent, Linda Besett.

Four months later, in response to an editorial praising Native American education in the schools, Deschenie wrote a thank-you note to the editor of the local paper which had published the editorial. In this note, Deschenie stated teaching Navajo language and culture was a "lonely battle when the powers-that-be knock the job." Although Deschenie did not intend for this email to be published, it was published as a letter to the editor on April 30 without prior district approval.[2] On May 15, at a School Board meeting, members of the School Board criticized Deschenie for publishing the letter to the editor.

In the meantime, there is evidence Deschenie's job performance began to decline. On May 12, 2003, Besett received an email from the New Mexico State Department of Education that explained bilingual education funding applications, due on April 25, had not yet been received. It was Deschenie's responsibility to ensure these applications were submitted on time. Shortly thereafter, on May 29, Besett proposed dividing Deschenie's position into two separate positions: an Indian Education Coordinator and a Bilingual Education Coordinator. Under this proposal, Deschenie's responsibilities were split and she became the Bilingual Education Coordinator. Besett also placed Deschenie on a growth plan that identified Deschenie's unsatisfactory performance in managing resources,

---

[2] In its brief, the Board claims it had a policy prohibiting media submissions by district employees without prior approval, but Deschenie has raised a genuine issue as to whether such a policy was in place. Viewing all evidence in the light most favorable to Deschenie, this court therefore assumes the publication of this letter did not violate any official district policy.

working productively with others, and adhering to established timelines and procedures.

Throughout the summer, there were numerous other problems relating to Deschenie's work performance. These included the rejection of the bilingual education applications on two occasions, the failure to assist in submitting the Indian education funding applications,[3] and the failure to attend a meeting she had scheduled to discuss the bilingual funding applications with principals. Deschenie disputes whether these problems can be attributed to her job performance. Specifically, she argues the bilingual education applications were rejected primarily due to the program's inadequate staffing, an issue out of her control.

On September 26, Besett gave Deschenie an additional set of tasks to complete as soon as possible and instructed her to compile a list of students in the bilingual program by October 6. Deschenie did not meet this deadline and provided incomplete data when she submitted the information three days late. Deschenie argues the volume of tasks given her was unrealistic and was intended to cause her to fail. After a few more meetings between Deschenie and Besett, in

---

[3]Deschenie contends it was not her responsibility to submit the Indian education funding applications because this duty was shifted away from her when her position was split. Nevertheless, she admitted Besett told her to complete these applications because no one had yet been hired for the other position. Thus, it is undisputed these applications were her responsibility at the time they were to be submitted.

-6-

which the two discussed Deschenie's job performance, Besett notified Deschenie of her termination on November 12, 2003.

Deschenie and three other plaintiffs filed suit in the United States District Court for the District of New Mexico pursuant to 42 U.S.C. § 1983, alleging the School Board, Manning, Besett, and other individual defendants had unlawfully retaliated against them for exercising their First Amendment rights. The defendants filed a motion for summary judgment as to Deschenie,[4] arguing (1) Deschenie's speech was not protected as a matter of law; (2) if the speech was protected, the *Pickering* balancing test weighed in favor of the defendants; (3) the only adverse employment action was the termination; and (4) the speech was not a motivating factor for any action taken by the defendants. The district court granted the motion. In doing so, it concluded three instances of speech were unprotected as a matter of law, and it found no genuine issue whether the protected speech was a substantial motivating factor in any adverse employment action.

## III. Analysis

This court reviews a district court's decision to grant summary judgment de novo, using the same legal standard applicable in the district court. *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). Summary judgment is appropriate only "if

---

[4]The other three plaintiffs had previously been dismissed from the lawsuit. One plaintiff dismissed her claims voluntarily, and summary judgment was granted in favor of the defendants as to the other two.

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, this court views all evidence and draws all reasonable inferences in favor of the nonmoving party. *Baca*, 398 F.3d at 1216. Mere allegations, however, are insufficient to survive a motion for summary judgment. *Id.* In cases involving the First Amendment, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Barker v. City of Del City*, 215 F.3d 1134, 1137 (10th Cir. 2000) (quotation omitted).

It is well-established that a public employee does not waive all her First Amendment rights by accepting public employment. *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1957 (2006). The Supreme Court has also long recognized, however, that the government's interest in regulating the speech of its employees differs significantly from its interest in regulating the speech of the public in general. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). In determining whether a public employer impermissibly retaliated against a public employee in violation of her First Amendment rights, this court applies the four-part test derived from *Pickering* and *Connick v. Myers*, 461 U.S. 138 (1983). *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998).

First, this court "must determine whether the employee's speech involves a matter of public concern." *Id.* Second, if this threshold requirement is satisfied, this court then balances "the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (quotation omitted). Third, if the employee's interest outweighs that of the government, "the employee then must show that the speech was a substantial factor or a motivating factor in the detrimental employment decision." *Id.* at 1201-02 (quotation omitted). Fourth, if the employee shows the protected speech was a substantial factor, the burden shifts to the employer to show "it would have taken the same action against the employee even in the absence of the protected speech." *Id.* at 1202. The first two steps of this analysis are questions of law to be resolved by the court, while the third and fourth steps are questions of fact for the jury. *Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996).

In this appeal, Deschenie argues summary judgment was inappropriate because her speech was protected as a matter of law and because she has raised a genuine issue of material fact as to whether the speech was a substantial factor in the subsequent adverse employment decisions. To evaluate her claim, this court must first "identify the speech which resulted in the alleged retaliation." *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003). The district court in this case identified five specific instances of speech, and only these five instances of

speech have been addressed by Deschenie on appeal.[5]  These alleged instances of

protected speech include: (1) the oral comments made to Manning on August 7,

2002; (2) the email sent to Manning on August 16, 2002; (3) the statements made

at the Indian Education Committee meeting on October 7, 2002; (4) the guest

column published on December 15, 2002; and (5) the letter to the editor published

on April 30, 2003.

**A. First Four Instances of Speech**

In its order granting summary judgment, the district court determined the

first two instances of Deschenie's speech were unprotected as a matter of law and

the next two instances were not substantial factors in any adverse employment

action taken by the School Board.  With respect to the first four instances of

speech, this court need not decide whether the first two prongs of the *Pickering*

analysis are satisfied because Deschenie has presented insufficient evidence to

raise a genuine issue of material fact as to the third prong.  Thus, this court may

assume, without deciding, the first two prongs are satisfied.

The third step in a claim of First Amendment retaliation requires the

employee to show "the exercise of constitutionally protected speech was a

---

[5]In the district court, Deschenie listed a number of other instances of
allegedly protected speech, including general comments about the importance of
the Indian Education and Bilingual Education programs, the rights of Native
Americans, and CCSD's compliance with Navajo employment laws.  The district
court denied protection for these instances of speech because they were too
"amorphous" to allow a proper analysis of the content, context, and form.

substantial motivating factor in the employer's decision to adversely alter the employee's conditions of employment." *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005). To meet this burden, the employee "need not prove that his speech was the sole reason for [the] defendants' action," but need only show the speech played a substantial part in the adverse employment action. *Copp v. Unified Sch. Dist. No. 501*, 882 F.2d 1547, 1553 (10th Cir. 1989). In the context of a summary judgment motion, the employee must "establish genuine issues of material fact as to whether his protected speech substantially motivated" the adverse employment actions. *Baca*, 398 F.3d at 1220.

The parties first dispute which actions taken by the Board constitute adverse employment actions for purposes of Deschenie's First Amendment retaliation claim. The district court determined only the position reclassification and the termination constituted sufficiently adverse actions. On appeal, Deschenie urges this court to recognize the May 15 reprimand, in addition to the position reclassification and the termination.[6] On the other hand, the School Board contends only the termination may be considered an adverse employment action. Because this court concludes there is no link between the first four

---

[6] In the proceedings below, Deschenie listed numerous other alleged adverse actions, including deprivation of supporting staff, thwarting of program activities, false accusations, and negative evaluations. At oral argument, however, she conceded only the three listed here qualified as adverse actions, and the others were relevant only to show the hostility expressed toward her by the Board.

instances of speech and any of these actions, it is unnecessary to decide this issue for purposes of Deschenie's claim.

To prevail on her appeal as to the termination, Deschenie must present sufficient evidence linking her termination to any of these four instances of speech. *Maestas*, 416 F.3d at 1188. In support of her position, Deschenie relies mostly on circumstantial evidence, including her ongoing criticism of the School Board and the Board's opposition and hostility toward her speech. As evidence of this hostility, she offers written correspondence by Besett to the State Superintendent, in which Besett appears to blame the public criticism of the administration on Deschenie. In addition, Deschenie attempts to cast doubt on the stated reasons for her termination. Deschenie contends she was given an unrealistic workload in the summer of 2003 in an effort to produce a paper trail sufficient to fire her. She also argues the rejection of the bilingual funding applications was not her fault, but rather a direct consequence of the inadequacies of the bilingual program she sought to improve.

Under the facts of this case, however, the lengthy time period between the protected speech and the termination, combined with Deschenie's intervening poor job performance, are insurmountable. An inference of retaliatory motive may be undermined by "a long delay between the employee's speech and [the] challenged conduct" or by "evidence of intervening events." *Id.* at 1189. Here, both of these circumstances are present. The four instances of speech preceded

-12-

the termination by fifteen months, fifteen months, thirteen months, and eleven months, respectively. The termination was therefore too temporally remote to permit an inference of retaliatory motive without additional evidence. Further, the Board has presented overwhelming evidence Deschenie's job performance suffered greatly in the months between the last of these instances of speech and the termination. During this time, Deschenie repeatedly missed deadlines, failed to perform assigned tasks, and received poor performance evaluations. Although Deschenie argues the Board's stated reasons are pretextual and Besett's actions toward Deschenie were designed to cause her to fail, she has presented insufficient evidence to support this conclusion.[7] In opposing a motion for summary judgment, "[s]peculation or hunches amidst rumor and innuendo will not suffice." *Id.* Significantly, there is no evidence in the record of any statements made by the Board to directly suggest Deschenie was terminated

_____

[7] Deschenie contends the bilingual education applications were rejected only because of inadequate staffing and CCSD's lack of compliance with state requirements. Because staffing was not her responsibility, she argues, it follows that the rejection of these applications could not constitute a legitimate non-retaliatory reason for her termination. In her deposition, however, Deschenie admitted some applications were also rejected because of missing data and inaccurate information. Further, it is undisputed the applications were not initially submitted on time. While it may not have been her responsibility to prepare the applications, Deschenie recognized it was her responsibility to complete a final review of the applications and ensure the applications were correct and complete by the due date. Thus, even if inadequate staffing was partially to blame for the rejection of the applications, there were additional problems with the submission of the applications which directly implicated Deschenie's job performance.

because of her speech. Thus, Deschenie has failed to raise a genuine issue of material fact as to whether her termination was substantially motivated by these first four instances of speech.

With regard to the reprimand and position reclassification, Deschenie's claim as to the first four instances of speech fails for the same reasons discussed above. The reprimand and position reclassification followed the four instances of speech by nine months, nine months, seven months, and five months, respectively, and Deschenie's failure to submit the bilingual education applications by the April 25 deadline constituted a significant intervening event. Further, to the extent Deschenie's speech was mentioned at the time of these actions, it was her April 30 letter to the editor and not these previous four instances that was discussed.[8]  Therefore, Deschenie has failed to present sufficient evidence to permit an inference that the Board's actions were in any way motivated by the first four instances of allegedly protected speech.

**B. April 30 Letter to the Editor**

The fifth and last instance of protected speech claimed by Deschenie is her email to the editor of the local newspaper, which was published as a letter to the

---

[8] Although Deschenie stated the Board mentioned "other articles" in the May 15 board meeting, she admitted it did not specifically reference any of the previous instances of speech. Based on the timing of the meeting and the strong emphasis on the April 30 letter to the editor at that meeting, this passing reference is not sufficient to raise a genuine issue whether the December 15 article was a substantial motivating factor in the Board's actions.

editor on April 30. The district court concluded this letter involved matters of public concern, but determined it was unprotected speech under the second prong of the *Pickering* analysis. Focusing on the letter's identification of Deschenie as a CCSD official and the Board's interest in clearing official statements with the administration, the district court determined the *Pickering* balancing test weighed in favor of the School Board.

### 1. Reprimand and Position Reclassification

Assuming the April 30 letter to the editor involved a matter of public concern, this court must next "balance the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *McFall v. Bednar*, 407 F.3d 1081, 1089 (10th Cir. 2005) (quotation omitted). In performing this balancing test, the court must consider "the manner, time, and place of the speech, as well as the context in which the dispute arose." *Weaver v. Chavez*, 458 F.3d 1096, 1100 (10th Cir. 2006). For the balance to tip in favor of the government employer, the employer bears the burden of showing the infringement on the employee's speech was necessary to prevent disruption and ensure efficient public services. *Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998). Further, this court may require a stronger showing of justification by the government when the employee's speech more substantially implicated matters of public concern. *Id.*

In evaluating the government interest in restricting the speech, the court may consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). This court will generally "defer to a public employer's reasonable predictions of disruption," as long as the predictions are supported by specific evidence. *Cragg*, 143 F.3d at 1347; *see also Weaver*, 458 F.3d at 1100. When the adverse employment action takes place several months after the employee's speech, however, it is no longer reasonable for the government to rely on predictions of disruption which did not materialize. *Kent v. Martin*, 252 F.3d 1141, 1145-46 (10th Cir. 2001); *see also id.* at 1145 ("Our cases applying the 'reasonable prediction of disruption' standard have done so in the context of a termination soon after the employee's exercise of speech, when the intent of the termination was to avoid actual disruption."). Rather, once a sufficient time has passed, the government employer may satisfy its burden only by showing specific evidence of actual disruption. *Id.* at 1145-46 ("[The 'reasonable prediction of disruption'] standard is inapplicable when an employer has allowed an employee to continue to work after the protected expression."); *Hulen*, 322 F.3d at 1239.

Turning first to Deschenie's interest in the April 30 letter to the editor, this court concludes her interest is significant but not overwhelming. By the time this letter was written, the issue of bilingual education had become a topic of high interest to the general public. As the director of the bilingual education program, Deschenie's position on the issue was particularly valuable in informing the public debate. Further, Deschenie's speech sought to expose to the public the School Board's lack of support for the bilingual education program. While such expression may not weigh as heavily in the employee's favor as directly exposing government corruption, it is nevertheless significant. *See Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir. 1988) ("[S]peech that seeks to expose improper operations of the government . . . clearly concerns vital public interests."). This is especially true, given the importance of the bilingual education program to the community and its connection to state education funding. Likewise, it would be difficult to identify a manner of speech more closely connected with matters of public concern than publication in a local newspaper.

Weighing against Deschenie's interest, however, are the specific content of the speech and the manner in which the speech took place. The letter did not explicitly allege lack of compliance with state law, as Deschenie had previously done. Instead, the letter merely expressed her personal support for Navajo education and her own frustration with the lack of support she and her staff received from the administration. In addition, Deschenie did not intend for the

-17-

letter to be published. Thus, her motive was not to inform the public on the matter, but to engage in private speech with a friend. While such speech may still implicate matters of public concern under the first step of the analysis, it does not weigh as heavily in the *Pickering* balancing test.

In the proceedings below, the Board attempted to further minimize Deschenie's interest by arguing her statements were knowingly false once Manning clarified he intended to improve the bilingual program, rather than eliminate it. Because an employee has no First Amendment interest in making statements which are deliberately or recklessly false, such statements must be given little weight in the balancing inquiry. *Dill*, 155 F.3d at 1202. The letter to the editor, however, did not claim the Board was eliminating the program, but instead explained Deschenie's concerns about the program's lack of support. Given the circumstances, the evidence supports a conclusion that Deschenie's concerns about the program were reasonable and not knowingly or recklessly false.

The court now turns to the Board's interest as an employer in restricting Deschenie's speech. Assuming the reprimand and position reclassification constituted adverse actions, these adverse actions occurred within a month after the publication of the letter to the editor. Therefore, at this point in time, the Board could justify any adverse action taken against Deschenie by its "reasonable predictions of disruption." This court has noted previously that "[a] government

employer is not required 'to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.'" *Weaver*, 458 F.3d at 1100 (quoting *Connick*, 461 U.S. at 152). If the employer's concerns are "reasonable and formed in good faith" and not "purely speculative allegations," these concerns may form a justifiable basis for regulating employee speech. *Gardetto*, 100 F.3d at 815-16.

As noted above, this court must consider the employer's interest in light of the manner, time, place, and context of the employee speech. Based on these considerations, the Board had a strong interest in restricting Deschenie's speech because of the potential disruption which could arise from its apparent inconsistent positions regarding the bilingual education program. The letter to the editor was published as signed by Deschenie in her capacity as a school administrator. When a government employee purports to speak on behalf of the government employer, the employer has a strong interest in controlling the speech. *Moore v. City of Wynnewood*, 57 F.3d 924, 933 (10th Cir. 1995). It is irrelevant that Deschenie did not intend for this letter to be so published because the speech, as ultimately printed, included her title, thus connecting CCSD to the letter.

Deschenie's position as Director of Indian Education and Bilingual Education also weighs heavily in favor of the Board's interest in restricting her speech. The Supreme Court has explained "[t]he burden of caution employees

bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails." *Rankin*, 483 U.S. at 390. Here, not only was Deschenie speaking as a school official, but she was the school official in charge of the very program the speech concerned, making her statements even more capable of interfering with the Board's official position. The manner in which Deschenie spoke further increased the potential for disruption. By going outside internal channels and airing her concerns publicly without district approval, Deschenie chose a method of expression which inherently had greater potential for disruption than other alternatives.[9] *See Lytle v. City of Haysville*, 138 F.3d 857, 865 (10th Cir. 1998).

Finally, the highly public nature of the issue and the public's confusion over the intent of the School Board weigh heavily in favor of the Board's interest in setting forth its position as clearly as possible. Deschenie herself admitted in a deposition there had been a public misconception the bilingual program would be eliminated. An email from the head of the bilingual program stating "the powers-that-be" criticize the teaching of Navajo language and culture, whether intended to be published or not, would surely have the potential to fuel this misconception.

---

[9] As noted above, the Board cannot rely on its alleged policy requiring all statements made on behalf of CCSD to receive district approval because Deschenie disputes the existence of such a policy. Even assuming no such policy was in place, however, Deschenie's failure to notify the administration of the letter still increases the likelihood of disruption and weighs in favor of the School Board's interest in restricting the speech.

Given all of these circumstances, it was reasonable for the Board to predict disruption arising from the publication of the letter to the editor at the time of the reprimand and position reclassification. Thus, its interest in avoiding this disruption outweighed Deschenie's speech interest at that time, and her April 30 letter to the editor does not merit First Amendment protection for purposes of the reprimand and position reclassification.

### 2. Termination

Although the School Board's interest outweighed Deschenie's interest at the time of the reprimand and demotion, it does not necessarily follow that this balance of interests could not shift over time. While reasonable predictions of disruption may be sufficient to justify government action occurring soon after the employee speech, this rule is inapplicable after several months have passed. *See Kent*, 252 F.3d at 1145. By the time the Board terminated Deschenie, six months had passed and a prediction of disruption could no longer justify an adverse employment action. *Id.* Rather, at the time of the termination, the Board could meet its burden under the second prong of the *Pickering/Connick* test only by establishing actual disruption resulting from the April 30 letter to the editor.

In this case, however, this court need not decide whether speech which is unprotected at one point in time because of its potential for disruption may become protected over time if no actual disruption materializes. Even assuming the April 30 letter to the editor was protected speech for purposes of the

termination, the court again concludes the link between the termination and the speech is too attenuated to support a claim. Thus, even if this instance of speech proceeds past the second prong of the *Pickering* analysis, it fails at the third step for the same reasons as the first four instances of speech discussed above.

Although the April 30 email was closer in proximity to the termination than any of the other instances of speech, it still preceded the termination by six months, which is too long to allow an inference of retaliatory motive.[10] In addition to her arguments addressed above, Deschenie points to statements made at the May 15 meeting criticizing the April 30 letter to the editor as direct evidence of a retaliatory motive. While this criticism may link the reprimand or even the position reclassification to the speech, it is insufficient to connect the speech to the termination which occurred six months after that criticism. Based on the long delay between the termination and the speech, and the intervening employment problems, this court holds Deschenie has failed to raise a genuine issue of material fact as to whether the termination was substantially motivated by her April 30 speech.

## IV. Conclusion

---

[10] In her brief, Deschenie relies heavily on the close time proximity between the April 30 letter to the editor, the May 15 board meeting, and the May 29 position reclassification. In light of this court's holding that the April 30 letter to the editor was not protected for purposes of the reprimand and position reclassification, however, this time proximity is irrelevant. For purposes of this portion of the opinion, the only relevant dates are the April 30 letter to the editor and the November 12 termination.

For the foregoing reasons, this court **affirms** the district court's grant of summary judgment to the defendants.